**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW ELLISON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUFIN SOFTWARE TECHNOLOGIES LTD., REUVEN KITOV, JACK WAKILEH, REUVEN HARRISON, OHAD FINKELSTEIN, EDOUARD CUKIERMAN, YAIR SHAMIR, RONNI ZEHAVI, YUVAL SHACHAR, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., JEFFERIES LLC, OPPENHEIMER & CO. INC., ROBERT W. BAIRD & CO. INCORPORATED, PIPER JAFFRAY & CO., STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., and D.A. DAVIDSON & CO.,<br><br>Defendants. | Case No. _____<br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF**
**FEDERAL SECURITIES LAWS**

Plaintiff Matthew "Matt" Ellison ("Ellison" or "Plaintiff"), individually and on behalf of

all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon

personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as

to all other matters, based on the investigation conducted by and through Plaintiff's attorneys,

which included, among other things, a review of U.S. Securities and Exchange Commission

("SEC") filings made by Tufin Software Technologies Ltd. ("Tufin" or the "Company"), analyst

and media reports, and the Company's press releases, among other sources.  Plaintiff believes that

substantial additional evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.      On March 6, 2019, Tufin filed a registration statement with the SEC on Form F-1, which, after several amendments, was declared effective on April 10, 2019 (the Form F-1, together with all amendments, is referred to herein as the "April Registration Statement").  Thereafter, on April 11, 2019, Tufin filed a prospectus for its initial public offering (the "IPO") on Form 424B4, which incorporated and formed part of the April Registration Statement (the "April Prospectus" and collectively, with the April Registration Statement, the "IPO Offering Documents"), issuing 7,700,000 ordinary shares to the investing public at $14.00 per share (the "IPO Price"), for anticipated gross proceeds of $107,800,000.

2.      On December 2, 2019, the Company filed a second registration statement with the SEC on Form F-1, which was declared effective on December 5, 2019 (the "December Registration Statement").  Thereafter, on December 5, 2019, Tufin filed a prospectus for its secondary offering (the "SPO") on Form 424B4, which incorporated and formed part of the December Registration Statement (the "December Prospectus" and collectively, with the December Registration Statement, "SPO Offering Documents"), issuing an additional 4,279,882 ordinary shares to the investing public at $17.00 per share (the "SPO Price"), for anticipated gross proceeds of $72,757,994.

3.      The IPO and SPO Offering Documents (together, the "Offering Documents") that Tufin and the other Defendants (defined below) used to ultimately secure over $180 million, combined, in net proceeds from investors, however, contained misleading statements in that, among other things: (i) Tufin's customer relationships and growth metrics were overstated, particularly with respect to North America; (ii) Tufin's business was deteriorating, primarily in North America; and (iii) as a result, Tufin's representations regarding its sustainable financial prospects were overly optimistic.

2

4.     On January 8, 2020, after the market closed, Tufin released its preliminary fourth quarter financial results for 2019 and announced significantly lowered financial expectations, specifically: (i) it expected to report total revenue in the range of $29.5 million to $30.1 million, lowered from its previous guidance of total revenue in the range of $34.0 million to $38.0 million; and (ii) it now anticipated non-Generally Accepted Accounting Principles ("GAAP") operating loss in the range of $1.1 million to $2.6 million, compared to the previous guidance of non-GAAP operating profit in the range of $0.0 million to $3.0 million.  The primary reason given for the revenue shortfall was Tufin's "inability to close a number of transactions, primarily in North America, that [the Company] anticipated would close but did not close by the end of the quarter."

5.     Following this news, Tufin's stock fell 24%, or $4.14 per share, and its market capitalization declined nearly $145 million.

6.     This securities class action is brought on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased stock in the Company's April 2019 IPO and/or December 2019 SPO pursuant and/or traceable to the misleading Offering Documents.  Plaintiff brings this class action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against: (i) Tufin; (ii) certain of the Company's senior executives, directors, and agents who signed the Offering Documents; and (iii) each of the investment banks that acted as underwriters for the Offering (collectively, "Defendants").  The Securities Act protects investors and the capital markets of the United States by preventing companies and underwriters from issuing shares to investors by means of incomplete and inaccurate offering documents.

7.     Plaintiff alleges that the Offering Documents contained materially incorrect or misleading statements and/or omitted material information that was required by law to be disclosed.  Defendants are each strictly liable for such misstatements and omissions therefrom

(subject only, in the case of the Individual and Underwriter Defendants (both defined below), to their ability to establish a "due diligence" affirmative defense and are so liable in their capacities as signers of the Offering Documents, control persons, and/or as issuers, statutory sellers, offerors, and/or underwriters of the shares sold pursuant to the IPO and SPO (together, the "Offerings")). Plaintiff expressly disclaims any allegations that could be construed as alleging fraud or intentional or reckless misconduct.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and are pursuant to §§11, 12(a)(2), and 15 of the Securities Act.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act (15 U.S.C. §77v).

10.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as the alleged misstatements entered and subsequent damages took place within this judicial district.  Further, Defendants' false and misleading statements and omissions were disseminated in this District and Tufin's common stock is listed on the New York Stock Exchange ("NYSE"), a national securities exchange, that is located in this District.

11.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of the national securities exchange.

## PARTIES

### A.      Plaintiff

12.      Plaintiff Ellison purchased Tufin common stock pursuant or traceable to the Offering Documents and was damaged thereby.

B.      **Defendants**

      i.      **Tufin**

13.      Defendant Tufin is an Israeli company that develops, markets, and sells software and cloud-based security solutions primarily in the United States, Europe, and Asia.  Tufin's common stock trades on the NYSE under the ticker symbol "TUFN."

      ii.      **The Individual Defendants**

14.      At all relevant times, Defendant Reuven Kitov ("Kitov"), who co-founded the Company, served as Tufin's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board").  Defendant Kitov signed, or authorized the signing of, both the IPO and SPO Offering Documents.

15.      At all relevant times, Defendant Jack Wakileh ("Wakileh") served as Tufin's Chief Financial Officer ("CFO").  Defendant Wakileh signed, or authorized the signing of, both the IPO and SPO Offering Documents.

16.      At all relevant times, Defendant Reuven Harrison ("Harrison"), who co-founded the Company, served as Tufin's Chief Technology Officer and as a director on the Board.  Defendant Harrison signed, or authorized the signing of, both the IPO and SPO Offering Documents.

17.      At all relevant times, Defendant Ohad Finkelstein ("Finkelstein") served as a director on the Board.  Defendant Finkelstein signed, or authorized the signing of, both the IPO and SPO Offering Documents.

18.      At all relevant times, Defendant Edouard Cukierman ("Cuikerman") served as a director on the Board.  Defendant Cukierman signed, or authorized the signing of, both the IPO and SPO Offering Documents.

19.     At all relevant times, Defendant Yair Shamir ("Shamir") served as a director on the Board.  Defendant Shamir signed, or authorized the signing of, both the IPO and SPO Offering Documents.

20.     At all relevant times, Defendant Ronni Zehavi ("Zehavi") served as a director on the Board.  Defendant Zehavi signed, or authorized the signing of, both the IPO and SPO Offering Documents.

21.     At all relevant times, Defendant Yuval Shachar ("Shachar") served as a director on the Board.  Defendant Shachar signed, or authorized the signing of, both the IPO and SPO Offering Documents.

22.     Defendants named in ¶¶14-21 above are collectively referred to herein as the "Individual Defendants."  The Individual Defendants each signed, or authorized the signing of, the IPO and SPO Offering Documents, were director appointees of the Board at the time of the IPO and SPO, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO, SPO, and their respective Offering Documents, and/or attended or contributed to road shows and other promotions to meet with and present favorable information to potential Tufin investors, all motivated by their own and the Company's financial interests.

### iii.     The Underwriter Defendants

23.     The following underwriters were also instrumental in soliciting and making the securities in the IPO and SPO available to the investing public:

| Name | # of IPO Shares | # of SPO Shares |
| --- | --- | --- |
| J.P. Morgan Securities LLC | 3,041,500 | 1,594,256 |
| Barclays Capital Inc. | 1,809,500 | 909,475 |
| Jefferies LLC | 1,155,000 | 545,685 |
| Oppenheimer & Co. Inc. | 539,000 | 288,892 |

| Name | # of IPO Shares | # of SPO Shares |
|---|---|---|
| Robert W. Baird & Co. Incorporated | --- | 256,793 |
| Piper Jaffray & Co. | 385,000 | 213,994 |
| Stifel, Nicolaus & Company, Incorporated | 385,000 | 213,994 |
| William Blair & Company, L.L.C. | 385,000 | 213,994 |
| D.A. Davidson & Co. | --- | 42,799 |

24.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents.  J.P. Morgan acted as a book-running manager of the Offerings and as a representative of all the underwriters.  J.P. Morgan also participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  J.P. Morgan's participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant J.P. Morgan maintains offices at 277 Park Avenue, New York, New York 10172.

25.     Defendant Barclays Capital Inc. ("Barclays") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents.  Barclays acted as a book-running manager of the Offerings and as a representative of all the underwriters.  Barclays also participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Barclay's participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant Barclays maintains offices at 745 7th Avenue, New York, NY 10019.

26.     Defendant Jefferies LLC ("Jefferies") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents.  Jefferies acted as a book-running manager of the Offerings and as a representative of all the underwriters.  Jefferies also participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Jefferies' participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant Jefferies maintains offices at 520 Madison Avenue, 10th Floor, New York, New York 10022.

27.     Defendant Oppenheimer & Co. Inc. ("Oppenheimer") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents. Oppenheimer participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Oppenheimer's participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant Oppenheimer maintains offices at 85 Broad Street, 22nd Floor, New York, New York 10004.

28.     Defendant Robert W. Baird & Co. Incorporated ("Baird") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading SPO Offering Documents.   Baird participated in conducting and promoting the roadshow for the SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Baird's participation in the solicitation of the SPO was motivated by its

financial interests.  Defendant Baird maintains offices at 1155 Avenue of the Americas, 16th Floor, New York, New York 10036.

29.     Defendant Piper Jaffray & Co. ("Piper Jaffray") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents.  Piper Jaffray participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Piper Jaffray's participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant Piper Jaffray maintains offices at 345 Park Avenue, #1200, New York, NY 10154.

30.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents. Stifel participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Stifel's participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant Stifel maintains offices at 787 7th Avenue, 11th Floor, New York, New York 10019.

31.     Defendant William Blair & Company, L.L.C. ("William Blair") was an underwriter of the Company's IPO and SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading IPO and SPO Offering Documents. William Blair participated in conducting and promoting the roadshow for the IPO and SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including

lodging and travel, among other expenses.  William Blair's participation in the solicitation of the IPO and SPO was motivated by its financial interests.  Defendant William Blair maintains offices at 1166 Avenue of the Americas, 20th Floor, New York, New York 10036.

32.     Defendant D.A. Davidson & Co. ("D.A. Davidson") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading SPO Offering Documents.  D.A. Davidson participated in conducting and promoting the roadshow for the SPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  D.A. Davidson's participation in the solicitation of the SPO was motivated by its financial interests.  Defendant D.A. Davidson maintains offices at 757 3rd Avenue, #1902, New York, New York 10017.

33.     The Defendants named in ¶¶23-32 above are collectively referred to herein as the "Underwriter Defendants."

34.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the IPO and SPO Offering Documents.  The Underwriter Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

35.     The Underwriter Defendants are investment banking houses that specialize, *inter alia*, in underwriting public offerings of securities.  As the underwriters of the IPO and SPO, the Underwriter Defendants earned lucrative underwriting fees as a result of their participation in the IPO and SPO.

36.     In addition, the Underwriter Defendants met with potential investors and presented highly favorable, but materially incorrect and/or misleading, information about the Company, its

business, products, plans, and financial prospects and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

37.     Representatives of the Underwriter Defendants also assisted the Company and Individual Defendants with planning the IPO and SPO.  They further purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

38.     In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to the Company's lawyers, management, directors, and top executives to determine: (i) the strategy to best accomplish the IPO and SPO; (ii) the terms of the IPO and SPO, including the price at which the Company's ordinary shares would be sold; (iii) the language to be used in the IPO and SPO Offering Documents; (iv) what disclosures about the Company would be made in the IPO and SPO Offering Documents; and (v) what responses would be made to the SEC in connection with its review of the IPO and SPO Offering Documents.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's management and top executives, at a minimum, the Underwriter Defendants should have known of the Company's undisclosed existing problems and plans and the material misstatements and omissions contained in the IPO and SPO Offering Documents, as detailed herein.

39.     The Underwriter Defendants also demanded and obtained an agreement from Tufin that the Company would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

40.     Tufin, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     Factual Background

41.     Founded in 2005 by Defendants Kitov and Harrison, Tufin develops, markets, and sells software and cloud-based security solutions, primarily in the United States, Europe, and Asia, that is committed to increasing business agility, eliminating errors from manual processes, and ensuring continuous compliance through a single console.

42.     Tufin offers five products to over 2,000 customers, including approximately 16% of the Global 2000, through a sales force, including field and inside sales teams, and over 140 active channel partners, which include distributors and resellers, as well as service delivery partners that help customers deploy, configure, customize, and maintain Tufin's products and services.

### B.     The IPO and SPO Offering Documents Contained Materially Untrue and Misleading Statements

43.     The Registration Statement and Prospectus used to effectuate Tufin's April 2019 IPO was false and misleading in that it misled investors with respect to the Company's North American business and the fact that the Company's customer relationships and growth metrics were overstated, that Tufin's business was deteriorating, and that, as a result, Tufin's representations regarding its sustainable financial prospects were overly optimistic, all of which were known to, but concealed by, Defendants at the time of the IPO.

44.     For example, for the fiscal year ended December 31, 2018, the IPO Offering Documents reported revenues from the Americas of $48.27 million, comprising 56.8% of Tufin's total revenues, compared to $35.02 million, or 54.3% of total revenues, for December 31, 2017, thereby indicating both significant revenue growth from the Americas relative to other geographic segments and substantial growth in the America's segment, specifically.

45.     The IPO Offering Documents also touted how "[t]he Americas accounted for the majority of [Tufin's] revenues in each of the years ended December 31, 2017 and 2018, nearly all of which were generated in the United States." And attributed increased revenues to "primarily [ ] increased sales of [Tufin's] products and services from new customers . . . and existing customers . . . across all regions," but that such growth was "most pronounced in the Americas."

46.     In addition, the IPO Offering Documents flaunted Tufin's purportedly strong customer relationships and technology products, citing both as being core parts of the Company's growth strategy. For example, the Offering Documents boasted that "[r]evenue generated from [Tufin's] Global 2000 customers, excluding maintenance renewals, represented an average of 65% of [the Company's] total revenue over the fiscal years ended December 31, 2016 to 2018" and, further, that Tufin has a "significant growth opportunity with Global 2000 customers that currently lack a security policy management solution or that use a competing product that lacks automation."

47.     The foregoing statements were materially inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that the Company's North American business was suffering at the time of Tufin's IPO. More specifically, that: (i) Tufin's customer relationships and growth metrics were overstated, primarily because of its North American business; (ii) Tufin's business was deteriorating, especially in North America; and (iii) Tufin's representations regarding its sustainable financial prospects were, as a result, overly optimistic.

48.     With the foregoing materially untrue and misleading statements in the IPO Offering Documents, the IPO was successful for the Company and its executives and directors, and the Underwriter Defendants, with the Company selling 7.7 million ordinary shares to Plaintiff and other members of the investing public, priced at $14.00 per share, raising approximately $107.8 million in capital.

49.     The Registration Statement and Prospectus used to effectuate Tufin's December 2019 SPO was similarly false and misleading as it continued to mislead investors with respect to the Company's North American business and the fact that the Company's customer relationships and growth metrics were overstated, that Tufin's business was deteriorating, and that, as a result, Tufin's representations regarding its sustainable financial prospects were overly optimistic, all of which were known to, but concealed by, Defendants at the time of the SPO.

50.     For example, as was stated in Tufin's IPO Offering Documents, the SPO Offering Documents claimed that Tufin's revenues from the Americas, for the fiscal year ended December 31, 2018, were $48.27 million, comprising 56.8% of Tufin's total revenues, compared to $35.02 million, or 54.3%, of total revenues for December 31, 2017.   As a result, Defendants again indicated that Tufin experienced significant revenue growth from the Americas relative to other geographic segments and that Tufin experienced substantial growth in the America's segment, specifically.

51.     As well, the SPO Offering Documents repeated the assertion made in Tufin's IPO Offering Documents that "[t]he Americas accounted for the majority of our revenues in each of the years ended December 31, 2017 and 2018," adding further that the same was true "in each of the nine months ended September 30, 2018 and 2019."  Moreover, the SPO Offering Documents credited Tufin's increased revenues "to increased sales of [the Company's] products and services

from new customers . . . and existing customers . . . across all regions," but that such growth was "most pronounced in the Americas."

52.     The SPO Offering Documents also continued to boast about Tufin's strong customer relationships and technology products, repeating the same about how "[r]evenue generated from [Tufin's] Global 2000 customers, excluding maintenance renewals, represented an average of 65% of [the Company's] total revenue over the fiscal years ended December 31, 2016 to 2018" and that Tufin has a "significant growth opportunity with Global 2000 customers that currently lack a security policy management solution or that use a competing product that lacks automation."

53.     The foregoing statements were materially inaccurate, misleading, and/or incomplete because, again, they failed to disclose, *inter alia*, that the Company's North American business was suffering, this time as of Tufin's SPO.  More specifically, that: (i) Tufin's customer relationships and growth metrics were overstated, primarily because of its North America business; (ii) Tufin's business was deteriorating, especially in North America; and (iii) Tufin's representations regarding its sustainable financial prospects were, as a result, overly optimistic.

54.     With the foregoing materially untrue and misleading statements in the SPO Offering Documents, the SPO was successful for the Company and its executives and directors, and the Underwriter Defendants, with the Company selling nearly 4.28 million shares of Tufin stock to the public at $17.00 per share, generating more than $72.7 million in gross proceeds.

55.     In addition, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), imposed an independent duty on Defendants to disclose in the IPO and SPO Offering Documents any known events or uncertainties that Tufin "reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations."  Defendants

violated Item 303 by failing to disclose that, at the time of both the IPO and the SPO: (i) Tufin's customer relationships and growth metrics were overstated, primarily because of its North America business; (ii) Tufin's business was deteriorating, especially in North America; and (iii) Tufin's representations regarding its sustainable financial prospects were, as a result, overly optimistic. These facts were likely to (and in fact did) materially and adversely affect Tufin's future results and prospects.

56.     Further, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503 ("Item 503"), also imposes an independent duty on Defendants to ensure that the "Risk Factors" section of the IPO and SPO Offering Documents discuss "the most significant factors that make the offering speculative or risky" and that each risks factor "adequately describes the risk." Tufin's discussions of risk factors did not mention, much less adequately describe, the actual significant risks associated with the sustainability of its customer relationships and financial prospects, particularly in North America.   Instead, the IPO Offering Documents contained generic boilerplate representations regarding seasonality in Tufin's sales, noting that Tufin's "sales cycle is long and unpredictable, which may cause significant fluctuations in [its] quarterly results of operations," that "[t]he loss or delay of one or more large transactions in a quarter could impact [Tufin's] anticipated results of operations for that quarter and future quarters for which revenue from the transaction is delayed," and that the Company "may not be able to accurately predict or forecast the timing of sales, which could cause [Tufin's] results to vary significantly from [the Company's] expectations and the expectations of market analysts."

57.     The true facts regarding the IPO and SPO Offering Documents began to emerge after both Offerings.  Indeed, in the immediate wake of the SPO, on January 9, 2020, Tufin's stock price declined as investors processed the Company's preliminary unaudited revenue and non-

GAAP operating loss estimates for its fourth fiscal quarter of 2019.  Notably, Tufin said that it expected to report total revenue in the range of $29.5 million to $30.1 million, compared to its previous guidance of total revenue in the range of $34.0 million to $38.0 million, and that Tufin anticipated non-GAAP operating *loss* in the range of $1.1 million to $2.6 million, compared to the Company's previous guidance of non-GAAP operating ***profit*** in the range of $0.0 million to $3.0 million.  According to Defendant Kitov, "[t]he primary reason for our revenue shortfall was our inability to close a number of transactions, primarily in North America, that we anticipated would close but did not close by the end of the quarter."  On this news, Tufin's shares fells $4.14 per share, or 24.04%, to close at $13.08 per share on January 9, 2020.

58.     As of the time this Complaint was filed, Tufin shares continued to trade significantly below both the IPO price of $14.00 per share and the SPO price of $17.00 per share.

59.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Tufin's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on behalf of a class consisting of all persons or entities that purchased Tufin ordinary shares in or traceable to both the IPO and SPO pursuant to their respective Offering Documents and who were damaged thereby (the "Class").  Excluded from the Class are: the Defendants and Individual Defendants' immediate family members; the officers, directors, affiliates, and subsidiaries of Tufin and Underwriter Defendants, at all relevant times, including Tufin's employee retirement and/or benefit plan(s), and their participants or beneficiaries, to the extent they made purchases through such plan(s); counsel of record for all parties; any entity in which Defendants have or had a controlling interest (but in the case of the

Underwriter Defendants, only such entities that they have a majority ownership interest in); and the legal representatives, heirs, successors, or assigns of any such excluded person or entity.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the IPO and SPO, Tufin common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

62.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interest, antagonism, or conflict with the members of the Class.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts, as alleged herein;

(b)     whether the IPO and SPO Offering Documents contained materially false and misleading statements and omissions; and

(c)     to what extent Plaintiff and the other members of the Class have sustained damages the proper measure of damages.

65.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**COUNT I**
**Violations of §11 of the Securities Act**
**(Against All Defendants)**

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

68.     This is a non-fraud Count.  Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

69.     The April and December Registration Statements were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

70.     The Defendants named herein are strictly liable to Plaintiff and the Class for the misstatements and omissions.

71.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the April and December

Registration Statements were true and without omissions of any material facts and were not misleading.

72.     Defendant Tufin is the registrant of the securities purchased by Plaintiff and the Class.  As such, the Company is strictly liable for the materially inaccurate statements contained in the IPO and SPO Offering Documents and the failure of the IPO and SPO Offering Documents to be complete and accurate.  By virtue of the IPO and SPO Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Tufin is liable under §11 of the Securities Act to Plaintiff and the Class.

73.     The Individual Defendants each signed the IPO and SPO Offering Documents and caused their issuance.  As such, each is strictly liable for the materially inaccurate statements contained in the IPO and SPO Offering Documents and the failure of the IPO and SPO Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the IPO and SPO Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the IPO and SPO Offering Documents misleading, and the IPO and SPO Offering Documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the IPO and SPO Offering Documents and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

74.     The Underwriter Defendants each served as underwriters in connection with either IPO or SPO (or both).  As such, each is strictly liable for the materially inaccurate statements contained in the IPO and SPO Offering Documents and the failure of the IPO and SPO Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the IPO and SPO Offering Documents.  They had a duty to ensure that such statements were true and accurate, there were no omissions of material facts that would make the IPO and SPO Offering Documents misleading, and the IPO and SPO Offering Documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the IPO and SPO Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

75.     Defendants acted negligently in preparing the IPO and SPO Offering Documents. None of the Defendants named in this Count made a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the IPO and SPO Offering Documents were true and without omission of any material facts and were not misleading.  In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

76.     By reason of the conduct alleged herein, each Defendant named in this Count violated §11 of the Securities Act.

77.     None of the untrue statements or omissions of material fact in the IPO and SPO Offering Documents alleged herein was a forward-looking statement.  Rather, each such statement

21

concerned existing facts.  Moreover, the IPO and SPO Offering Documents did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

78.     Plaintiff acquired the Company's ordinary shares pursuant or traceable to the IPO and SPO Offering Documents and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff sustained damages, and the price of the Company's ordinary shares declined substantially due to material misstatements in the IPO and SPO Offering Documents.

79.     This Count is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the IPO and SPO.

80.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

## COUNT II
### Violations of §12(a)(2) of the Securities Act
### (Against All Defendants)

81.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.     This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77*l*(a)(2), on behalf of the Class, against all Defendants.  Section 12(a)(2) gives rise to liability as to "[a]ny person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading."  15 U.S.C.§77*l*(a)(2).  Liability for a violation of §12(a)(2) extends to those, at a minimum, who passed title to the security to the purchaser, as well as those who solicited the purchase.

83.     This is a non-fraud Count.  Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

84.     Defendants named in this Count were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the defective April and December Prospectuses.  Defendants issued or caused to be issued the April and December Prospectuses, which were used to induce investors, such as Plaintiff and the other members of the Class, to purchase the Company's ordinary shares.  Defendants solicited the purchase of securities motivated at least in part by a desire to serve their own financial interests.

85.     The April and December Prospectuses contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  The actions of solicitation by the Defendants named in this Count included participating in the preparation of the false and misleading April and December Prospectuses and marketing of Tufin's ordinary shares to investors, such as Plaintiff and the other members of the Class.

86.     Defendants named in this Count owed to the purchasers of Tufin ordinary shares, including Plaintiff and the other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the April and December Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  By virtue of each of these Defendants' failure to exercise reasonable care, the April and December Prospectuses contained misrepresentations of material facts and omissions of material facts necessary to make statements therein not misleading.

87.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the April and December Prospectuses.

88.     These Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the April and December Prospectuses to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.   None of these Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the April and December Prospectuses were accurate and complete in all material respects.   Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.   In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

89.     This Count is brought within one year after discovery of the untrue statements and omissions in the April and December Prospectuses and within three years after the Company's ordinary shares were sold to the Class in connection with the IPO and SPO.

90.     By reason of the conduct alleged herein, the Defendants named in this Count violated §12(a)(2) of the Securities Act.   As a direct and proximate result of such violation, Plaintiff and the other members of the Class, who purchased Tufin ordinary shares pursuant to the April and December Prospectuses, sustained substantial damages in connection with their share purchases.   Accordingly, Plaintiff and the other members of the Class, who hold the ordinary shares issued pursuant to the April and December Prospectuses, have the right to rescind and recover the consideration paid for their ordinary shares with interest thereon or damages as allowed by law or in equity.   Class members who have sold their Tufin ordinary shares seek damages to the extent permitted by law.

## COUNT III
### Violations of §15 of the Securities Act
### (Against the Individual Defendants)

91.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

92.     This Count is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each of the Individual Defendants.

93.     The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, had the power to influence, and exercised same over the Company to cause it to engage in the conduct complained of herein.  The Company controlled the Individual Defendants and all of Tufin's employees.

94.     Similarly, each of the other Individual Defendants not only controlled those subject to liability as primary violators of §§11 and 12(a)(2) of the Securities Act, as alleged in Counts I and II above, they directly participated in controlling Tufin by having signed or authorized the signing of the IPO and SPO Offering Documents and authorizing the issuance of Tufin ordinary shares to Plaintiff and members of the Class.

95.     As control persons of Tufin, each of the Individual Defendants are jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Tufin for its violations of §11 of the Securities Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the other members of the Class, prays for judgment as follows:

A.     Declaring that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as the Class Representative;

B.     Awarding Plaintiff and the other members of the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2) claims;

D.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.     Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  July 21, 2020

SCOTT+SCOTT ATTORNEYS AT LAW LLP

 _/s/ Thomas L. Laughlin, IV_
THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
JONATHAN M. ZIMMERMAN
(to be admitted *pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Attorneys for Plaintiff Matthew Ellison*