**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TUFIN SOFTWARE TECHNOLOGIES LTD. SECURITIES LITIGATION | Master File No. 1:20-cv-5646-GHW<br><br>Hon. Gregory H. Woods |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO**
**DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

AMERICAS 108440525

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.   PLAINTIFF FAILS TO STATE A SECTION 11 CLAIM ...................................... 1

    A.   Plaintiff Challenges Inactionable "Puffery" ............................................... 1

    B.   Plaintiff's Claims of Falsity Are Refuted By The Disclosures When The Actual Language Is Not Omitted ................................................................... 4

        1.   Tufin's Statements Concerning Its Sales Force Were Not False ................ 4

        2.   Tufin's Descriptions Of The Length Of Its Sales Cycle Were Not False ... 5

    C.   The Confidential Witness Accounts Do Not Plead Falsity ........................... 6

        1.   The Allegations Of The CWs Are Insufficient To Support The Claim ...... 6

        2.   The CW Accounts Do Not Render Tufin's Statements About Its Sales Force False ............................................................................................ 8

        3.   The CW Accounts Do Not Render Tufin's Descriptions Of The Length Of Its Sales Cycle False ............................................................................... 9

    D.   Plaintiff's Challenges To Tufin's Risk Disclosures Are Not Actionable ............... 9

II.  PLAINTIFF FAILS TO STATE A SECTION 15 CLAIM ................................... 10

CONCLUSION ................................................................................................................. 10

AMERICAS 108440525

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)..................................................................................3

*In re Amtrust Fin. Servs., Inc. Sec. Litig.*,
    No. 17-cv-1545 (LAK), 2019 U.S. Dist. LEXIS 153297 (S.D.N.Y. Sept. 9, 2019).................4

*In re AT&T/DirecTV Now Sec. Litig.*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020)..................................................................................8

*In re Avon Secs. Litig*,
    No. 19 Civ. 01420, 2019 U.S. Dist. LEXIS 200816 (S.D.N.Y. Nov. 18, 2019) ....................2

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015)..................................................................................2

*In re Synchrony Fin. Sec. Litig.*,
    988 F.3d 157 (2d Cir. 2021)................................................................................................2

*In re Xinhua Fin. Media, Ltd. Sec. Litig.*,
    No. 07 Civ 3994, 2009 U.S. Dist. LEXIS 14838 (S.D.N.Y. Feb. 25, 2009) ...........................2

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*,
    No. 3:09-CV-01740, 2013 U.S. Dist. LEXIS 40788 (D. Conn. Mar. 23, 2013) ....................8

*Ont. Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*,
    432 F. Supp. 3d 131 (D. Conn. 2019)..................................................................................3

*Rubinstein v. Credit Suisse Grp. AG*,
    457 F. Supp. 3d 289 (S.D.N.Y. 2020)..................................................................................7

*SEC v. Mudd*,
    No. 11 Civ 9202 (PAC), 2016 U.S. Dist. LEXIS 24233 (S.D.N.Y. Feb. 29, 2016)................6

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)..............................................................................................2, 3

*Steinberg v. PRT Grp., Inc.*,
    88 F. Supp. 2d 294 (S.D.N.Y. 2000)....................................................................................7

### STATUTES AND RULES

15 U.S.C. § 77k.............................................................................................................................1, 10

AMERICAS 108440525

## PRELIMINARY STATEMENT

This case is based on missed projections, which are inactionable.  Consequently, Plaintiff tried to avoid that law by alleging a handful of anecdotal opinions of former employees that lack any plausible nexus to Tufin's challenged public disclosures.  Plaintiff cannot state a securities law violation by offering allegations that former employees believed an issuer's products were "nice-to-have," but not a "must-have" product, that they should have been permitted to expense multiple rounds of drinks, that management "micromanaged the sales process," or that the sales people did not understand "the most effective way to sell" the product.  These soft gripes do not state securities law violations.  Indeed, Plaintiff's theory is based on Tufin's overall operations, and Plaintiff admits that none of the CWs can speak to Tufin's overall operations.  The Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A SECTION 11 CLAIM

### A.    Plaintiff Challenges Inactionable "Puffery"

The vague, general descriptors alleged in the Complaint, including statements that Tufin's sales force is "highly trained" and that the Company "invests significant time and resources in training," lack the objective facts necessary to render statements actionable under the securities laws.  *See* Mot. 11-13.  Defendants cited numerous cases holding statements nearly identical to the challenged statements were mere puffery, including statements describing management as "experienced" and "capable" (*Xinhua*); concerning "allocat[ion] of significant resources" to compliance (*Singh*); touting a company as "highly disciplined" (*JP Morgan*); touting "remarkable progress" (*Aratana*); and describing a business model as "provid[ing] substantial value" (*Synchrony*), among others.  *See* Mot. 12-13.  Plaintiff attempts to distinguish these cases, but was only able to point to irrelevant facts having no bearing on the courts'

1

AMERICAS 108440525

holdings regarding puffery.  For example, Plaintiff summarily dismisses *JP Morgan, Aratana,* and *Synchrony* because they concerned "future events," but none of those cases even mentioned any purportedly forward-looking nature of the statements identified in the Motion, but rather found them inactionable because they were generalized puffing as here.  *See, e.g.*, *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) ("words like ... 'significantly' do not provide metrics on which a reasonable investor would rely"); *see also In re Xinhua Fin. Media, Ltd. Sec. Litig.*, No. 07 Civ. 3994, 2009 U.S. Dist. LEXIS 14838, at *22 (S.D.N.Y. Feb. 25, 2009) ("soft adjectives" like "experienced" and "capable" are "not actionable under the securities laws"); Mot. 12-13 (collecting cases).  Similarly, Plaintiff claims that *Singh* is distinguishable because it concerned "general declarations about the importance of act[ing] lawfully" (Opp. 13), but Defendants did not cite such declarations.  Rather, the Motion (at 12) cites statements about "allocate[ing] significant resources" to compliance, and the Second Circuit expressly held that the words "significant resources" were too "generic" to be actionable.  *Singh v. Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019).  The other of the statement was irrelevant.

Plaintiff cites to *Petrobras* and *Avon*, but those courts held the companies' statements went beyond vague optimism because they repeatedly "reassure[d] the investing public" about the "effectiveness" and "success" of business practices that in fact were in material failure.  *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 372, 375 (S.D.N.Y. 2015) (company "repeatedly represented that it maintained effective internal [anti-corruption] controls and procedures, when in fact those controls and procedures suffered from material weaknesses," to the point that the company was undisputedly "at the center of a multi-year, multi-billion dollar bribery and kickback scheme"); *In re Avon Secs. Litig*, No. 19 Civ. 01420, 2019 U.S. Dist. LEXIS 200816, at *38-39, *46-47 (S.D.N.Y. Nov. 18, 2019) (company repeatedly "assured"

2

investors that its team in Brazil was "doing a good job of maintaining the underlying health of the business" when, in fact, undisclosed changes had materially worsened the company's financial health).  Tufin made no assurances that its sales force was (or would be) successful, and the Complaint does not allege that Tufin was concealing any crisis.  Rather, Tufin stated that it "invests significant time and resources in training," a fact Plaintiff does not even claim to be untrue.  *See Singh*, 918 F.3d at 60, 63 (a reasonable investor would not rely on statements that a company "expect[s] to continue to allocate significant resources" to compliance efforts as representations of satisfactory compliance).  Similarly, in *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, 432 F. Supp. 3d 131, 166-67 (D. Conn. 2019) (cited at Opp. 13), statements that the company "belie[ved] in competition" and had a "competitive pricing strategy" were found not "too general" to mislead a reasonable investor where the company was actively engaged in a price-fixing strategy with competitors.  *See id.*  Here, Plaintiff has not alleged any facts contradicting Defendants' statements.  And, contrary to Plaintiff's suggestion (at Opp. 12-13), *Evoqua* did not find the statement regarding the company's "intent to continue to invest in [its] sales force" to be non-puffery.  There was no puffery challenge to that statement at all.  *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 405, 407-08 (S.D.N.Y. 2020).  Rather, the court held that statement was protected by the bespeaks caution doctrine (*id.* at 397) and then separately found that the company misled investors by concealing that it had one year before the IPO implemented a "systematic and pervasive" policy of terminating "its most experienced [sales] personnel" in order to cut costs because that was "guaranteed to have a negative effect on sales after the IPO."  *Id.* at 404-05, 409.  Plaintiff has failed to allege a plan like in *Evoqua* to terminate or force out the company's most experienced sales personnel to the company's "devastat[ion]."  To the contrary, Plaintiff claims that new hires

3

AMERICAS 108440525

would be terminated "due to low production," consistent with most employers. Compl. ¶ 64.

Plaintiff also relies on two analyst reports, which he claims show the alleged statements about Tufin's "highly trained" sales force were "important" to investors. Opp. 12. Whether a statement is puffery does not depend on importance to investors. Rather, as discussed in the Motion, to be actionable a statement must convey at least some concrete or objective fact, and Plaintiff identified none. *See* Mot. 12-13. Nor has Plaintiff shown the analysts found the challenged puffery important. Plaintiff tries to tie the analyst reports to the challenged puffery, but the reports note that Tufin "built out its inside sales team" and made an "invest[ment] in adding more sales capacity" (Opp. 12), which comments have nothing to do with training. Rather, these comments speak to Tufin's disclosure about "increase[ing] the number of [] sales and marketing personnel," a statement Plaintiff does not claim to be misleading. Ex. A at 15.

### B. Plaintiff's Claims of Falsity Are Refuted By The Disclosures When The Actual Language Is Not Omitted

#### 1. Tufin's Statements Concerning Its Sales Force Were Not False

Tufin's SEC filings refute Plaintiff's conclusory allegations that the Company was "not ... 'invest[ing] significant time and resources in training'" as of the IPO (Compl. ¶ 76) because they disclose Tufin's actual pre-IPO expenditures, as well as post-IPO revenue of $25.1 million for Q2 2019, or an increase of 36% from Q2 2018, demonstrating as false Plaintiff's argument that Tufin's sales force could not sell the product. *See* Mot. 14. Unable to challenge this fact, Plaintiff instead argues that extrinsic evidence may not be considered on a motion to dismiss. Opp. 9. To the contrary, it is well settled in this Circuit that a company's SEC filings, including post-IPO filings, may be considered on a motion to dismiss. *See, e.g.*, *In re Amtrust Fin. Servs., Inc. Sec. Litig.*, No. 17-cv-1545 (LAK), 2019 U.S. Dist. LEXIS 153297, at *28-29 (S.D.N.Y. Sept. 9, 2019) ("'In deciding a motion to dismiss, the Court considers […] legally required

4

public disclosure documents filed with the SEC.'").  Plaintiff cites no authority to the contrary.

Plaintiff also incorrectly states that Defendants rely on *post*-IPO expenditures as evidence of its pre-IPO training investments.  Opp. 10.  In fact, the Motion cites the Registration Statement itself to show Tufin's contemporaneous disclosures of its actual expenditures and revenue.  Mot. 14 (citing Ex. A).  Plaintiff also mistakenly treats the June 2019 Q1 disclosure as reporting on "*post*-IPO" expenses "for" June 2019.  Opp. 10.  That Form 6-K was filed in June 2019, but it reported on January-March 2019, pre-IPO, expenses.  *See* Ex. B.

### 2. Tufin's Descriptions Of The Length Of Its Sales Cycle Were Not False

Plaintiff does not dispute that his claims are based on isolating the phrase "[o]ur sales cycle usually lasts several months" while ignoring the remainder of the sentence—which states the cycle is "often even longer"—as well as other warnings that the sales cycle is generally "long and unpredictable."  Ex. A at 13; *see also* Mot. 14-15.  Instead, Plaintiff argues that these statements were misleading "half-truths" because, while literally true, they "anchor[ed]" expectations to "several months" rather than a longer timeframe.  Opp. 11.  This argument fails.

*First*, the Registration Statement itself disproves Plaintiff's "anchoring" theory.  The phrase "usually lasts several months" first appears in the "**RISK FACTORS**" section as follows:

> ***Our sales cycle is long and unpredictable, which may cause significant fluctuations in our quarterly results of operations.***
>
> The <u>timing of our sales</u> and related revenue recognition <u>is difficult to predict</u> because of <u>the length and unpredictability of the sales cycle</u> for our products. We and our channel partners often spend significant time and resources to better educate and familiarize potential customers with the value proposition of our products and platform. <u>Our sales cycle usually lasts several months from proof of concept to purchase order from our customers, and it is often even longer, less predictable and more resource-intensive for larger transactions.</u> ...

Ex. A at 13 (underline added).  Nothing in this passage would mislead a reasonable investor into thinking that the sales cycle was only "occasional[ly] slightly-longer" than "a handful of

AMERICAS 108440525

months," as Plaintiff argues.  Opp. 9.  To the contrary, the "anchor" of this paragraph is, if anything, a warning that the sales cycle is "long and unpredictable," usually lasting a *minimum* of several months.  *See id.*

*Second*, as discussed below, Plaintiff has not alleged any facts supporting his claims that the sales cycle was not in fact "usually several months" at the time of the IPO.  *See infra* p. 9.

### C.    The Confidential Witness Accounts Do Not Plead Falsity

#### 1.    The Allegations Of The CWs Are Insufficient To Support The Claim

Plaintiff does not dispute that the Complaint alleges no corrective disclosure whatsoever and that his falsity allegations are based exclusively on the accounts allegedly provided by eleven unnamed former Tufin employees.  *See* Mot. 15-17.  But, as shown in the Motion, the CW accounts comprise generalized, subjective critiques—such as "the Suite was 'nice-to-have,' but not a 'must-have' product"—and complaints—including that a CW was kept on half salary during training and unable to expense multiple rounds of drinks—which could be leveled at any company.  *See* Mot. 16.  Such generalized, subjective remarks may demonstrate the grievances of disgruntled former employees, but they fall far short of stating a securities violation.

Moreover, the premise of the Opposition is that the sales force lacked sufficient training to sell, or took too long to sell, but the Opposition does not, and cannot, dispute that Tufin's sales force in fact generated $85 million in revenue in 2018—the year immediately preceding the April 2019 IPO—a 31.7% increase from 2017.  *See* Mot. 14; Ex. A at 15.  Nor does Plaintiff dispute that Tufin's sales force was sufficiently trained to achieve an increase of 25.4% for the first quarter ended March 31, 2019 compared to the first quarter of 2018, followed, by another increase, immediately after the IPO, of 36% for the second quarter of 2019.  *See* Mot. 14.  These objective facts govern over the Plaintiff's characterization of them.  *See Steinberg v. PRT Grp., Inc.*, 88 F. Supp. 2d 294, 300 (S.D.N.Y. 2000) ("If a plaintiff's claims of misstatement or

6

omission conflict with the plain language of the prospectus, the prospectus controls and the court need not accept as true the allegations in the complaint."); *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 295 (S.D.N.Y. 2020) ("[T]he Court need not credit claims that are contradicted by documents incorporated in the complaint or publicly filed with the SEC.").

Further, despite the Opposition's repeated claims of insufficient training, only two of the CWs even mention training and, importantly, both merely commented that training occurred at headquarters without further "on-the-job training." *See* Compl. ¶ 54. Citing to a list-style internet article titled "Types & Methods of Salesmen Training" to suggest that on-the-job training should have been provided does not state falsity. *See id.* (quoting from https://accountlearning.com/types-methods-salesmen-training-individual-group-training/).

Moreover, the CW allegations cannot support a securities claim because none of the CWs are able to speak to Tufin's operations as a whole, the subject of the disclosures at issue. *See* Mot. 16. The Opposition concedes that no CW had a view of company-wide operations and argues, instead, that "'insight into an issuer's operation as a whole' [is] not required" because each CW was in a position to know the information he or she alleged. Opp. 17-18. This argument misses the point. Even if the CW allegations could be credited as plausibly alleging the facts stated by each CW (i.e., his or her own personal experiences), such anecdotes do not plausibly support Plaintiff's sweeping and speculative allegations about Tufin's overall sales cycle and sales force. Rather, Plaintiff is left with only a small handful of anecdotal accounts by low-level employees and subjective opinions and complaints about the adequacy of Tufin's training program. These CW accounts do not show any of the challenged statements—which concern the entire company—to be false. Such a small sample of individual experiences is wholly insufficient to undermine statements about Tufin's overall operations. *See NECA-IBEW*

7

*Health & Welfare Fund v. Pitney Bowes Inc.*, No. 3:09-CV-01740, 2013 U.S. Dist. LEXIS 40788, at *106-07 (D. Conn. Mar. 23, 2013) (dismissal warranted where plaintiff failed to establish any nexus between happenings in regional offices and company-wide level); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 527 n.19 (S.D.N.Y. 2020) ("'Even concrete [CW] allegations of wrongdoing may be deficient if they do not allege a problem of sufficient magnitude to undermine the defendants' public statements[.]'").[1]

Plaintiff also has no response to the fact that the Complaint does not connect any of the CW allegations to the missed projections that Plaintiff cites as causing his loss. Mot. 16. In fact, unable to explain this glaring omission, Plaintiff asserts that he is not required to plead loss causation and that the Complaint "does not allege *anything* related to the cause of Plaintiff's loss[.]" Opp. 17 (emphasis in original). Plaintiff was not required to plead loss causation, but the Complaint does allege that Tufin's share price fell in response to news that Tufin missed an earnings projection made after the IPO. *See* Compl. ¶¶ 8, 79. Absent any connection between this earnings miss and the challenged statements, Plaintiff's claims are not plausible.

### 2. The CW Accounts Do Not Render Tufin's Statements About Its Sales Force False

The CW statements also fail to show that Tufin spoke falsely in describing its sales force as "highly trained" or stating that it "invests significant time and resources in training new sales force personnel" because none of the CW accounts actually contradict these statements. Mot. 18. Rather, as shown, the various CW allegations are at most isolated accounts of individual experiences that do not undermine Tufin's statements about its overall sales force; opinions and criticisms of Tufin's hiring and turnover, which say nothing about Tufin's investments in

---

[1] Plaintiff fails to distinguish the cases cited on pages 16-17 of the Motion for this same reason. Contrary to Plaintiff's assertion (at Opp. 18), the fatal deficiency in those cases was that, like here, the CWs were unable to speak to the companies' operations as a whole. *See* Mot. 16-17 (citing cases).

8

training or the quality of its personnel; and grievances about irrelevant practices such as expense policies or the decision to go public, which have nothing to do with the challenged statements. Mot. 18-19, 20 n.7.  Plaintiff does not even attempt to refute these points.

### 3. The CW Accounts Do Not Render Tufin's Descriptions Of The Length Of Its Sales Cycle False

Plaintiff also does not attempt to refute Defendants' showing that the CW allegations are consistent with Tufin's statements about the length of its sales cycle.  Mot. 19-20.  At most, Plaintiff states that "CW1, CW2, CW7, CW9, and CW11 all agreed that a sales cycle of 'several months' was inaccurate, and that a closer approximation of the cycle timing was in years, not months" (Opp. 17), but this statement is not supported by any facts alleged in the Complaint. None of the CWs are alleged to have commented on the accuracy of the disclosure.  *See* Compl. ¶¶ 55, 56, 58.  Moreover, these CWs stated only that sales "could" take years to close, without any context such as how many transactions were observed or an explanation of whether the transactions referenced were the larger deals that Tufin explicitly warned took longer.  Compl. ¶¶ 55, 56; *see also* Mot. 19-20.  Plaintiff does not dispute these facts.

### D. Plaintiff's Challenges To Tufin's Risk Disclosures Are Not Actionable

The Motion demonstrates (at 20-21) that the following statements are inactionable because they are protected by the bespeaks caution doctrine:

- "***Our inability to attract or retain qualified personnel or delays in hiring required sales personnel <u>may</u> seriously harm our business, financial condition and results of operations.***"  Compl. ¶ 75 (emphasis in original).

- "***We <u>may</u> be unable to hire or retain sufficient numbers of qualified individuals in the future in the markets in which we currently operate or where we seek to conduct business. Our failure to hire a sufficient number of qualified sales force members and train them to operate at target performance levels <u>may</u> materially and adversely impact our projected growth rate.***"  Compl. ¶ 75 (emphasis in original).

- "***We <u>may</u> not be able to accurately predict or forecast the timing of sales, which could cause our results to vary significantly from our expectations... and the expectations of***

9

*market analysts.*"  Compl. ¶ 77 (emphasis in original).

The Opposition does not dispute that these statements are forward-looking or that they are accompanied by sufficient cautionary language.  Opp. 21.  Thus, Plaintiff concedes that these statements cannot form the basis of a securities claim.  Indeed, Plaintiff now refers to the quoted language as the "cautionary language."  Opp. 21.

Notwithstanding this concession, Plaintiff obliquely argues that Defendants "confuse[] 'forward-looking statements' with the required 'meaningful cautionary language.'"  Opp. 21.  To the contrary, Defendants addressed the exact statements Plaintiff alleged as false or misleading.  *See* Compl. ¶ 72 n.9 ("[T]he statements Plaintiffs allege as false or misleading are emphasized with bold and italics.") & ¶¶ 75, 77.  Ironically, it is Plaintiff who conflates the bespeaks caution doctrine and the concept of cautionary language, making his response difficult to understand.  Nevertheless, to the extent Plaintiff is arguing that the above-quoted statements are not forward-looking, he is wrong.  As shown in the Motion, these statements are plainly forward-looking and they are further specifically identified in the Registration Statement as forward-looking.  *See* Mot. 20-21.  And, Plaintiff still failed to plead any facts supporting his theory that any risks or risk factors had materialized at the time of the IPO, as explained in the Motion (at 15-20, 23-24).

## II.   PLAINTIFF FAILS TO STATE A SECTION 15 CLAIM

Plaintiff does not contest that the failure to state a Section 11 claim mandates dismissal of his Section 15 claims.  *See* Mot. 25.

## CONCLUSION

For the reasons set forth above and in the Motion, Defendants respectfully request that the Complaint be dismissed in its entirety with prejudice.

10

Dated: August 25, 2021
       New York, New York

WHITE & CASE LLP

 s/ *Glenn M. Kurtz*
Glenn M. Kurtz
Kimberly A. Havlin
Susan L. Grace
Jennifer M. Thomas
1221 Avenue of the Americas
New York, New York 10020
T: (212) 819-8200
F: (212) 354-8113
gkurtz@whitecase.com
kim.havlin@whitecase.com
susan.grace@whitecase.com
jennifer.thomas@whitecase.com

*Attorneys for Defendants*

11

AMERICAS 108440525