**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TUFIN SOFTWARE TECHNOLOGIES LTD. SECURITIES LITIGATION | Master File No. 1:20-cv-5646-GHW<br><br>Hon. Gregory H. Woods<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ......................................................................................1

II.  FACTUAL BACKGROUND.....................................................................................2

III. ARGUMENT:  THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23 OF
     THE FEDERAL RULES OF CIVIL PROCEDURE.........................................................4

    A.  The Rule 23(a) Requirements Are Satisfied .............................................................6

        1.  The Proposed Class Is So Numerous That Joinder of All Members Is
            Impracticable...............................................................................................6

        2.  Questions of Law or Fact Are Common to the Class ..............................7

        3.  Plaintiff's Claims Are Typical of the Class ............................................8

        4.  Plaintiffs Will Fairly and Adequately Protect the Interests
            of the Class..................................................................................................9

    B.  The Requirements of Rule 23(b)(3) Are Satisfied..................................................11

        1.  Common Questions of Law and Fact Predominate ...............................11

        2.  A Class Action Is Superior to Other Available Methods for the Fair and
            Efficient Adjudication of the Controversy.............................................12

IV.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.................14

V.   CONCLUSION...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................5, 9, 10, 11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
133 S. Ct. 1184 (2013)..........................................................................................................4

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...............................................................................................................6

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000).....................................................................................................9

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...............................................................................................................4

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .........................................................................................11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)................................................................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..........................................................................................................6, 11

*Fogarazzao v. Lehman Bros., Inc.*,
232 F.R.D. 176 (S.D.N.Y. 2005) .........................................................................................12

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) .........................................................................................10

*Gucciardo v. Titanium Constr. Servs.*,
No. 16-cv-1113, 2017 U.S. Dist. LEXIS 109727 (S.D.N.Y. July 14, 2017)...........................5

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) ...............................................................................8, 12, 13

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
No. 17 CIV. 01580 (LGS), 2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019)...............................1

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
No. 17 CIV. 1580 (LGS), 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ................................1

*In re Deutsche Bank AG Sec. Litig.*,
   328 F.R.D. 71 (S.D.N.Y. 2018) ........................................................................................9, 10

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .....................................5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) .......................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   245 F.R.D. 147 (S.D.N.Y. 2007) .........................................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)....................................................................................................8

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
   299 F.Supp.3d 430 (S.D.N.Y. 2018)...................................................................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................................................7

*In re Scor Holding (Switz.) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008)................................................................................14

*In re Teva Sec. Litig.*,
   No. 3:17-CV-558 (SRU), 2021 WL 872156 (D. Conn. Mar. 9, 2021)...................................12

*In re Veeco Instruments, Inc., Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) .........................................................................................6

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..........................................................................................9, 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ..........................................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................................................13

*Kaplan v. S.A.C. Cap. Advisors, L.P*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .........................................................................................1

*Louisiana Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   No. 2:11-CV-289, 2017 WL 3149424 (D. Vt. July 21, 2017)...........................................1, 7

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)..........................................................................................13

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
No. 08-CV-5310 (DAB), 2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016)..........................8, 9, 12

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).....................................................................................................1, 13

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................................................................5, 7

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993).......................................................................................9

*Roofers' Pension Fund v. Papa*,
No. CV 16-2805, 2017 WL 1536222 (D.N.J. Apr. 27, 2017) ...........................................14, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).........................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007)...............................................................................................13, 14

*UFCW Local 1776 v. Eli Lilly and Co.*,
620 F.3d 121 (2d Cir. 2010)...........................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................................................................................................6

**Rules**

Fed. R. Civ. P. 23(a) ..............................................................................................1, 6

Fed. R. Civ. P. 23(a)(1)...............................................................................................6

Fed. R. Civ. P. 23(a)(2)...............................................................................................7

Fed. R. Civ. P. 23(a)(4)...............................................................................................9

Fed. R. Civ. P. 23(b)(1)..............................................................................................5

Fed. R. Civ. P. 23(b)(2)..............................................................................................5

Fed. R. Civ. P. 23(b)(3)............................................................................... *passim*

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................................14

Lead Plaintiff Mark Henry and Named Plaintiffs Matt Primozich and William J. Allen (collectively, "Plaintiffs"), submit this motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and memorandum in support of the motion.

## I.    PRELIMINARY STATEMENT

This lawsuit is a typical example of a case warranting class action treatment.  Plaintiffs allege that they were injured by the same wrong as other Class members—by Defendants' false and/or misleading statements and omissions made in Tufin's Registration Statement.  The issues of law and fact relevant to the elements that must be shown for Plaintiff's Section 11 claim are substantially the same for each and every member of the putative Class.  Indeed, class action treatment is especially appropriate because many members of the putative Class, like Plaintiffs, have relatively small losses, making it unfair and inefficient to force them to vindicate their claims individually.

"The Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation and has explicitly noted its preference for class certification in securities cases." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 17 CIV. 01580 (LGS), 2019 WL 5287980, at *4 (S.D.N.Y. Oct. 18, 2019), *report and recommendation adopted in part,* No. 17 CIV. 1580 (LGS), 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) (internal citations and quotations omitted); *see also Louisiana Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2017 WL 3149424, at *3 (D. Vt. July 21, 2017) (same); *Kaplan v. S.A.C. Cap. Advisors, L.P*, 311 F.R.D. 373, 378 (S.D.N.Y. 2015) (same); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available.").

As detailed below, this action satisfies all the requirements for class certification under Rule 23(a):  numerosity; commonality; typicality; and adequacy of representation.  This action

1

also satisfies the two core requirements for certification under Rule 23(b)(3):  predominance of common questions of law or fact and superiority of a class action over other available methods for adjudication.  Class certification, therefore, is warranted here.

## II.    FACTUAL BACKGROUND

Defendant Tufin Software Technologies Ltd. ("Tufin" or "Company") is a self-described network-security policy-management company that offers products designed to protect against cybercrime—*i.e.*, crime involving unauthorized access to computer systems.  ¶¶2, 41-42.[1]  Tufin offers a suite of five interrelated software products called the "Tufin Orchestration Suite" (the "Suite"), which are designed to help companies protect against cybercrime.  ¶¶39-43.

Selling the Suite was difficult, and its sales cycle was extremely long, technical, and complex. ¶56. Instead of offering the Suite as a SaaS subscription model, Tufin sold the Suite as a one-time, perpetual license, with an average price exceeding $200,000.  ¶47.  According to former Tufin employees serving as Confidential Witnesses ("CW"), the reaction by customers was that the Suite was "nice-to-have," but not a "must-have" product, which exacerbated the sales challenge presented by the Suite's high cost.  ¶45.  Due to the customers' indifference and perceived lack of need regarding the Suite, Tufin's sales team needed a longer amount of time, product knowledge, and technical expertise to effectively explain Tufin's product offerings and demonstrate how Tufin's software adds value to make a sale.  ¶¶45, 54-58.

According to former Tufin employees, Tufin's sales cycle "was typically at least a year," and could take "at least two years to close," with "a six-month deal … only achievable with luck." ¶55.

---

[1] Citations to "¶__" or "¶¶__" are references to the numbered paragraphs of the Second Amended Consolidated Complaint.

On March 6, 2019, Tufin filed its Registration Statement (the "Tufin Registration Statement") on Form F-1 and filed amendments on March 18, 2019 and April 1, 2019. ¶¶67, 69. The Tufin Registration Statement told investors that Tufin's sales cycle usually lasts several months, which together with other related statements in the Tufin Registration Statement, created a false and/or misleading impression regarding Tufin's sales

On April 11, 2019, Defendants filed a Prospectus on Form 424B4 that amended the Registration Statement and allowed the sale of securities to the public to proceed. ¶71. Tufin's Offering began selling shares on April 11, 2019 at $14.00 per share, and ultimately sold 8.855 million shares, receiving approximately $124 million in net proceeds from the IPO. In their initiating-coverage reports, Tufin's analysts discussed representations related to the makeup and skill of the Company's sales force and noted the short interval of the Suite's sales cycle. ¶72. On December 2, 2019, Tufin conducted a second public offering of 3,500,000 shares, later expanding to a total of 4,620,000 shares, with a near-identical registration statement to the Tufin Registration Statement that included the exact same (actionable) language concerning Tufin's sales cycle.

On January 9, 2020, Tufin released preliminary unaudited revenue and non-GAAP operating loss estimates for the fourth fiscal quarter of 2019, revealing total revenue in the range of $29.5 million to $30.1 million, compared to its previous guidance of total revenue in the range of $34.0 million to $38.0 million, and an anticipated non-GAAP operating loss in the range of $1.1 million to $2.6 million, compared to previous guidance of non-GAAP operating profit in the range of $0.0 million to $3.0 million. ¶6. Tufin admitted that it was unable "to close a number of transactions, primarily in North America" as the primary reason for Tufin's revenue shortfall. It also admitted that the miss occurred because the deals were too complex and large, and that Tufin lacked the scale required in order to manage a substantial volume of large complex deals. ¶7. On

3

July 21, 2020, when this action commenced, Tufin's stock price closed for trading at a price of $10.50 per share.

The initial complaint against Defendants was filed in Federal Court on July 21, 2020 (Dkt. 1)[2]. After the Court appointed both lead counsel and lead plaintiffs, Lead Plaintiff Mark Henry and Named Plaintiffs Matt Primozich and William J. Allen (collectively, "Plaintiffs") filed their initial Amended Complaint on February 4, 2021 (Dkt. 55). Defendants moved to dismiss on May 20, 2021 (Dkt. 61-63). Defendants' Motion to Dismiss was denied in the main on February 25, 2022 (Dkt. 69). Plaintiffs filed the operative Second Amended Complaint on March 31, 2022 (Dkt. 70), and Defendants filed their Answer and Affirmative Defenses on April 14, 2022 (Dkt. 73).

## III.    ARGUMENT

### THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiffs seek to certify a class consisting of all persons who purchased or otherwise acquired Tufin shares pursuant and/or traceable to Tufin's Registration Statements issued in connection with its April 11, 2019 initial public offering or its December 2, 2019 secondary public offering.[3]

The Supreme Court has repeatedly stressed the importance of the class action device in redressing the wrongs committed under federal securities laws. *See*, *e.g.*, *Amgen Inc. v. Conn. Ret.*

---

[2] Related actions were filed by several plaintiffs in the Supreme Court of New York County, New York, on May 28th and June 15th, and July 1st of 2020, respectively, and a consolidated amended complaint filed by Mr. Allen on November 17, 2020, Index No. 652118. A subsequent consolidated amended complaint was filed by Matt Primozich on August 16, 2021, Index No. 651287/2020 (together, the "State Court Actions"). The State Court Actions were voluntarily dismissed in favor of the federal action on April 6, 2022, upon the Defendants' agreement not to oppose the addition of Mr. Allen and Mr. Primozich as additional named plaintiffs in the federal action.

[3] Excluded from the Class are: Defendants; and Defendants' immediate family members and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant; and the

*Plans & Tr. Funds*, 133 S. Ct. 1184, 1201 (2013); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313-14, 320 n.4 (2007); *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). The Second Circuit has echoed this sentiment. *See*, *e.g.*, *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.,* 277 F.R.D. 97, 101 (S.D.N.Y. 2011) (*citing Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997) ("As courts have repeatedly found, suits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amenable to class action resolution. … The instant action depends, more than anything else, on establishing that certain statements and omissions common to all the offerings were material misrepresentations: a classic basis for a class action. Moreover, the potential defenses to liability in this case, to the extent they are viable at all, can largely be resolved through generalized proof. Finally, the class action approach to this case promises an enormous savings in judicial resources."). Likewise, "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation and has explicitly noted its preference for class certification in securities cases." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at \*12 (S.D.N.Y. July 27, 2007) (internal citations and quotations omitted); *see also Gucciardo v. Titanium Constr. Servs.*, No. 16-cv-1113, 2017 U.S. Dist. LEXIS 109727, at \*7 (S.D.N.Y. July 14, 2017) (Schofield, J.) ("The Second Circuit gives Rule 23 a 'liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.'").

To certify a putative class, the Court must determine whether four threshold requirements of Fed. R. Civ. P. 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy

---

legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded from the Class is any Class Member who timely and validly requested exclusion.

of representation. *Amchem*, 521 U.S. at 613. In addition, the Court must determine whether the action is maintainable under Fed. R. Civ. P. 23 (b)(1), (2) or (3). *Id.* Here, Plaintiffs seek to certify a class under Rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

While courts must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), Rule 23 is not a "license to engage in free-ranging merits inquiries at the class certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* Accordingly, merits issues such as materiality are not appropriate subjects for resolution on a motion for class certification. *See, e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011); *see also Amgen*, 568 U.S. at 466.

**A.  The Rule 23(a) Requirements Are Satisfied**

> **1.  The Proposed Class Is So Numerous That Joinder of All Members Is Impracticable**

To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiffs must establish that "the class is so numerous that joinder of all members is impracticable." *See* FED. R. CIV. P. 23(a)(1). "While no minimum number of plaintiffs is required for a suit to be maintained as a class action, '[g]enerally, courts will find a class sufficiently numerous when it comprises 40 or more members.'" *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006) (citation omitted). "Precise quantification of the class members is not necessary because a court

may make common sense assumptions regarding numerosity." *Id.*  In securities actions involving nationally-listed public companies, numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).

During the Class Period, the common stock of Tufin was listed on the New York Stock Exchange ("NYSE") and traded under the ticker symbol "TUFN."  There were 7,700,000 shares issued at the start of the Class Period pursuant to Tufin's initial public offering, and after granting underwriters a 30-day over-allotment option, 8,855,000 shares sold pursuant to the initial public offering.  On December 2, 2019, Tufin conducted a second public offering of 3,500,000 shares, later expanding to a total of 4,620,000 shares, with a near-identical registration statement to the Tufin Registration Statement that included the exact same (actionable) language concerning Tufin's sales cycle.  Although Plaintiffs have not at this time ascertained the precise number of potential Class members, they believe that there are many thousands of geographically dispersed members of the proposed Class.  The proposed Class, therefore, consists of a sufficient number of persons to make joinder impracticable.  Accordingly, Rule 23(a)(1) is satisfied.

### 2.    Questions of Law or Fact Are Common to the Class

Commonality is easily satisfied, as there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  "Even a single common question of law or fact may suffice to satisfy the commonality requirement," *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 105, and Rule 23(a)(2) is a "low hurdle" that is "easily surmounted," *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995).

As in most securities class actions, the trial here will focus on "common issues relating to violations of federal securities laws, misrepresentations of material fact, scienter, and damages." *Louisiana Mun. Police Emps. Ret. Sys.*, 2017 WL 3149424, at *3.  Each Class member was injured

as a result of common misrepresentations and omissions concerning the length of Tufin's sales cycle and impacted by disclosures affecting equally all market participants transacting in Tufin shares.  Furthermore, the legal claims asserted by Plaintiffs are common to all proposed Class members, *see* ¶86, and the evidence Plaintiffs will employ to prove those claims will be common to all Class members, *see, e.g.,* evidence cited *supra* at Section II.

Common questions of law and fact include: (i) whether Defendants violated the Securities Act; and (ii) whether Tufin's claims about the length of its sales cycle were materially false and misleading.  The misstatements regarding the length of Tufin's sales cycle were made in the Registration Statement disseminated in the market to all purchasers of Tufin common stock. Therefore, the price of any Class member's shares that were purchased in, or are traceable to the offering, are presumed to have been inflated by the material misrepresentations and/or omissions in the Registration Statement.  In comparable situations, courts have consistently found the commonality requirement to have been satisfied.  *See, e.g.*, *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021) (finding commonality where "nearly all questions of law and fact are common to all Plaintiffs and class members claims, including whether Defendants made materially false and misleading statements or omissions in their Registration Statement"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007), *order aff'd in part, vacated in part*, 574 F.3d 29 (2d Cir. 2009) (finding commonality where, *inter alia*, the question of "whether defendants violated the federal securities law by the acts and conduct alleged in the Complaint" was common to all class members).  Accordingly, commonality is satisfied.

### 3.    Plaintiff's Claims Are Typical of the Class

In securities cases, typicality is "not demanding."  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08-CV-5310 (DAB), 2016 WL 7409840, at *4 (S.D.N.Y.

Nov. 4, 2016).  "Rule 23(a)(3) is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *Id.* (citation omitted).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id.*  (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

Plaintiffs' claims are typical as they purchased their shares of Tufin common stock in, or traceable to, the offering and were injured by the same common course of conduct, i.e., Defendants' material, misrepresentations and/or omissions in the Registration Statement. Plaintiffs' claims, therefore, are based on the same misrepresentations and/or omissions and the same legal theories as those on which the claims of all other members of the Class are based. Their claims, therefore, typical of the claims of all Class members.  Accordingly, typicality is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4)'s requirement that "the representative parties will fairly and adequately protect the interests of the class" is also met here.  Adequacy assesses "whether: 1) plaintiff's interests are antagonistic to other class members; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted).  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 595 (citation omitted).    Only a "fundamental" conflict will affect adequacy.    *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citations omitted).  Minor or speculative conflicts "should be disregarded at the class certification stage."  *Id.*

Both elements of the adequacy requirement are easily satisfied here.  *First*, Plaintiffs' interests are not antagonistic to the interests of other class members.  The adequacy inquiry is

particularly focused on "uncover[ing] conflicts of interest between named parties and the class they seek to represent." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 81–82 (S.D.N.Y. 2018) (citing *Amchem*, 521 U.S. at 625). "However, a conflict or potential conflict alone will not ... necessarily defeat class certification – the conflict must be fundamental." *Id.* at 81–82 (citing *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 134 (S.D.N.Y. 2014) and *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 145 ("speculative conflict should be disregarded at the class certification stage"). "A finding that a proposed class representative satisfies the typicality inquiry, though not sufficient on its own, constitutes strong evidence that its interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff's claims will vindicate those of the class." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 81–82 (internal citations and quotations omitted); *see also In re Libor-Based Fin. Instruments Antitrust Litig.*, 299 F.Supp.3d 430 (S.D.N.Y. 2018) (explaining that adequacy of representation overlaps with the commonality and typicality inquiry). Here, typicality is abundantly satisfied. *Supra*. Moreover, Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 625, and no actual or potential conflicts exist. Plaintiffs and all Class members have suffered losses from purchasing Tufin securities at artificially inflated prices. *See* Dkt. 30-1; Declaration of Matthew W. Primozich, ¶4, Ex. 1; Declaration of William J. Allen, ¶4, Ex. 2. All have been injured by the same underlying misrepresentations and omissions of Defendants.

*Second*, Plaintiffs have engaged qualified, experienced, and zealous attorneys in this matter – the firms Pomerantz LLP, The Rosen Law Firm, P.A., and Levi & Korsinsky, LLP. Proposed Class Counsel have all routinely served as lead counsel in securities class actions in federal courts

10

across the country and have won substantial recoveries for classes represented by the firm in securities class actions and other complex litigation, and have the ability and willingness to prosecute this action vigorously. *See* Declaration of Christopher P.T. Tourek ("Tourek Decl."), Exs. 1-3. Finally, the record demonstrates that Plaintiffs and their counsel have zealously advanced the Class's interests here. Plaintiffs defeated Defendants' motion to dismiss (Dkt. 69), and have thoroughly pursued relevant discovery, gathering evidence that will benefit the Class at trial. Accordingly, Rule 23(a)(4) is satisfied.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and that a class action be superior to other available methods of litigating. *See Halliburton Co.*, 563 U.S. at 810. These requirements are satisfied here.

**1.      Common Questions of Law and Fact Predominate**

"Predominance is a test readily met in certain cases alleging … securities fraud . . . ." *Amchem*, 521 U.S. at 625. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010) (internal quotation marks omitted).

Courts have consistently found that common issues of law and fact will generally predominate in actions, as here, alleging that material misrepresentations were made to large groups of investors. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("Common questions of law and fact are present where, as here, the alleged [cause of action] involves material misrepresentations and omissions in documents circulated to the investing public, press releases and statements provided to the investment community and the media, and

11

investor conference calls."). The central issues of falsity and materiality are common to all class members, so common questions predominate. Additionally, because Section 11 provides a statutory formula for damages, predominance is further established. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) (certifying the class "where Section 11(e) of the Securities Act provides a statutory formula for damages").

### 2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

"The superiority prong of Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication." *Fogarazzao v. Lehman Bros., Inc.,* 232 F.R.D. 176, 182 (S.D.N.Y. 2005); Fed. R. Civ. P. 23(b)(3). Securities fraud actions "easily satisfy the superiority requirement of Rule 23." *New Jersey Carpenters Health Fund*, 2016 WL 7409840, at *11.

Rule 23(b)(3) sets forth the following factors to be considered when assessing "superiority":

> (A) the class members' interest in individually controlling the prosecution . . . of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

These factors weigh in favor of class certification in this case. *First*, the members of the proposed Class have little incentive to pursue individual actions. The costs and expenses of such actions, when weighed against the individual recoveries obtainable, would be prohibitive. *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *9 (D. Conn. Mar. 9, 2021)

12

(internal citations and quotations omitted) ("In general, securities suits easily satisfy the Superiority Requirement of Rule 23(b)(3) because the alternatives are either no recourse for thousands of stockholders' or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake"); *Hawaii Structural Ironworkers Pension Tr. Fund, Inc.*, 338 F.R.D. at 217 ("multiple lawsuits would be costly and inefficient and although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf, a class action is the superior method of ensuring efficient and fair adjudication of all claims"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003) (finding superiority requirement met when "[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail," particularly when many of the putative plaintiffs have suffered economic loss of *de minimus* value); *Phillips Petroleum Co.*, 472 U.S. at 809 (1985) (class actions allow plaintiffs to pool claims that would otherwise be uneconomical to litigate individually).  Indeed, Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 100 (D. Conn. 2010).  Moreover, if Plaintiffs and each of the Class members were forced to bring separate individual actions, each would be required to prove the same wrongdoing by Defendants to establish liability, resulting in unnecessary relitigation and potentially inconsistent judgments.

*Second*, Plaintiffs are unaware of any other litigation concerning the misrepresentations identified in the Second Amended Complaint.  *Third*, the desirability of concentrating the litigation of these claims in this forum is clear.  This class action is not only an essential mechanism for

13

investors to redress the injuries they suffered because of Tufin's misconduct, but it will also facilitate the vindication of the statutory objective of a fair, orderly, trustworthy, and reliable securities market. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2508 n.4, (2007) ("Nothing in the [PSLRA], we have previously noted, casts doubt on the conclusion 'that private securities litigation is an indispensable tool with which . . . investors can recover their losses'—a matter crucial to the integrity of domestic capital markets.") (citations omitted). Moreover, there are thousands of class members. "Litigating each case separately would be wasteful, and result in delay and an inefficient expenditure of judicial resources." *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008). It would also "risk disparate results among those seeking redress." *Id*. *Fourth*, Plaintiffs anticipate no difficulties in the management of this action as a class action. As a result, a class action is not only the superior method of adjudication, but also perhaps the only feasible way to litigate the claims alleged in this action.

## IV.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g)(1)(A) sets forth the factors a court must consider in appointing Class Counsel, including: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* FED. R. CIV. P. 23(g)(1)(A).

These considerations all weigh in favor of appointing Plaintiffs' counsel: Levi & Korsinsky, LLP, Pomerantz LLP, and The Rosen Law Firm, P.A. as Class Counsel. The firms have devoted substantial time and resources to identifying and prosecuting the claims in this Action, investigating the legal and factual bases for those claims, drafting the Amended Complaint, defeating in large part Defendants' motions to dismiss, and pursuing discovery. The three firms

14

have heretofore dedicated teams of experienced attorneys to prosecute this Action.  Moreover, the firms have extensive experience prosecuting complex securities-fraud actions and have achieved historic recoveries for investors in such actions.  *See* Exs. 1-3 to Tourek Decl. (Pomerantz LLP firm resume, The Rosen Law Firm, P.A. firm resume, Levi & Korsinsky, LLP firm resume); *Roofers' Pension Fund v. Papa*, No. CV 16-2805, 2017 WL 1536222, at \*7 (D.N.J. Apr. 27, 2017) (Plaintiff's "chosen counsel are . . . sophisticated and experienced in these matters.").  Moreover, proposed Class Counsel are willing and able to commit the necessary resources to achieve a successful recovery for investors, as they have in numerous other similar matters.

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court issue an Order: (1) certifying this action pursuant to Rule 23 as a class action and certifying the Class defined herein; (2) appointing Plaintiffs as the Class Representatives; (3) appointing Plaintiffs' Counsel as Class Counsel; and (4) granting such other and further relief as the Court may deem just and proper.

DATED: February 16, 2023                                **LEVI & KORSINSKY, LLP**


/s/ Adam M. Apton
Nicholas I. Porritt
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171

*Counsel for Lead Plaintiff Mark Henry*
*and Lead Counsel for the Class*

**POMERANTZ LLP**
Patrick V. Dahlstrom
Christopher P.T. Tourek (*pro hac vice*
application forthcoming)

15

10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
         ctourek@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Brent LaPointe
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com
         blapointe@rosenlegal.com

*Counsel for Named Plaintiffs Matt
Primozich and William J. Allen*

16