**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE TUFIN SOFTWARE
TECHNOLOGIES LTD. SECURITIES
LITIGATION

Master File No. 1:20-cv-5646-GHW

Hon. Gregory H. Woods

CLASS ACTION

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

I.    PRELIMINARY STATEMENT .........................................................................1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT.............................2

    A.  Factual Background .................................................................................2

    B.  Procedural History ...................................................................................3

    C.  The Settlement ........................................................................................5

III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .............6

    A.  The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and Grinnell .................................................................................8

        1.  The Class Was Well-Represented by Plaintiffs and their Counsel...........9

        2.  The Settlement Is the Result of Good Faith, Arm's Length Negotiations .........................................................................................11

        3.  The Settlement Is an Excellent Result for the Class ..............................11

            a.  The costs, risks and delay of trial and appeal support approval ....12

            b.  Other Rule 23(e)(2)(C) factors support approval ..........................13

        4.  The Settlement Treats All Class Members Equitably............................15

    B.  The Remaining Grinnell Factors Support Approval...............................15

IV.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED ......................................................................................................17

V.    THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE .................17

VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................18

VII.  CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE...................................................................................................20

A. Numerosity.................................................................................................................21

B. Commonality...............................................................................................................22

C. Typicality ...................................................................................................................22

D. Adequacy ...................................................................................................................23

E. The Class Meets the Requirements of Rule 23(b) ....................................................23

F. Lead Counsel Satisfies Rule 23(g).............................................................................24

VIII.    CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc., v. Windsor*,
  521 U.S. 591 (1997)..................................................................................20, 23, 24

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...................................................................13

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ..................................................................14

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999) .........................................................15

*Burns v. FalconStor Software, Inc.*,
  No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...............14

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............8, 9, 15, 17

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)..........................14

*Collins v. Olin Corp.*,
  No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ....................................15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..........................................................................11

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................8, 9

*Gay v. Tri-Wire Eng'g Solutions. Inc.*,
  No. 12 CV 2231, 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014)...........................14, 15

*Gordon v. Vanda Pharms. Inc.*,
  No. 19 CV 1108 (FB)(LB), 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)...............22, 23, 24

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...............14

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
  338 F.R.D. 205 (S.D.N.Y. 2021) ................................................................22

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................16

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................11, 16

*In re Am. Int'l. Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)........................................................................................23, 24

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) .................................................................................7

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)...........................................................................11

*In re China Sunergy Sec. Litig.*,
    No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................12

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) .................................................................................7

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)..........................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) .................................................................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)...........................................................................................22, 23

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)..........................................................................24

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
    No. 01 CIV. 3020 (SAS), 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007) ..................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 CIV. 2613 NRB, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) ....................................7

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................15

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)...............................................15

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)....................................12

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ..........................................................................................16

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................................7

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) ...................................................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).........................................................................................8, 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................14

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................................22

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ..............................................................................................9

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)..................................14

*In re Sequans Commc'ns  S.A. Sec. Litig.*,
Case No. 17-cv-04665-FB-SJB (S.D.N.Y. Sept. 28, 2020)....................................................14

*In re Take Two Interactive Sec. Litig.*,
No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010)..............................17

*Kalnit v. Eichler*,
99 F. Supp. 2d 327 (S.D.N.Y. 2000)......................................................................................13

*Karvaly v. eBay, Inc.*,
245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................................20

*Khait v. Whirlpool Corp.*,
No. 06 CV 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).............................................14

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)...............................16

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019)....................................................................................................17

v

*Micholle v. Ophthotech Corp.*,
No. 17-CV-1758 (VSB), 2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022)................................24

*Mohney v. Shelly's Prime Steak. Stone Crab & Oysters Bar*,
No. 06 CV 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)............................................15

*Pearlstein v. BlackBerry Ltd.*,
No. 13 CV 7060, 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ...............................................21

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir.)...........................................................................................................21

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................................13

*Rodriguez v. CPI Aerostructures, Inc.*,
No. 20CV0982ENVCLP, 2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021)...................21, 22, 23

*Silverberg v. People's Bank*,
23 F. App'x 46 (2d Cir. 2001) ...............................................................................................15

*Stefaniak v. HSBC Bank USA, N.A.*,
No. 1:05-CV-720 S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ......................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...............................................................................................6, 7, 9

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................................................................................................20

## Rules & Regulations

Fed. R. Civ. P. 23..................................................................................................................2

Fed. R. Civ. P. 23(a) ........................................................................................................20, 21

Fed. R. Civ. P. 23(a)(1).............................................................................................................21

Fed. R. Civ. P. 23(a)(2).............................................................................................................22

Fed. R. Civ. P. 23(a)(3).............................................................................................................22

Fed. R. Civ. P. 23(b)(3)....................................................................................................20, 21, 23

Fed. R. Civ. P. 23(b)(3)(D) ......................................................................................................20

Fed. R. Civ. P. 23(c)(2)........................................................................................................17, 20

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................................17

Fed. R. Civ. P. 23(e)(1)......................................................................................................................7

Fed. R. Civ. P. 23(e)(1)(B) ..............................................................................................................17

Fed. R. Civ. P. 23(e)(2)..............................................................................................................7, 8, 9

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................................9

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................................................................11

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................................11, 13

Fed. R. Civ. P. 23(e)(2)(C)(ii)..........................................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(iv)..........................................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ..............................................................................................................15

Fed. R. Civ. P. 23(e)(3)................................................................................................................8, 13

Fed. R. Civ. P. 23(g) ...................................................................................................................24, 25

Fed. R. Civ. P. 23(g)(1)(A)...............................................................................................................25

**Statutes**

15 U.S.C. §78u-4(a)(7) .....................................................................................................................17

Private Securities Litigation Reform Act of 1995 .............................................................2, 17, 18

Section 11 of the Securities Act of 1933 ...........................................................................................4

Section 15 of the Securities Act of 1933 ...........................................................................................4

**Additional References**

4 NEWBERG ON CLASS ACTIONS (5th ed. 2012)..................................................................20

Manual for Complex Litigation (Fourth)........................................................................................20

Lead Plaintiff Mark Henry ("Henry") and Named Plaintiffs Matt Primozich ("Primozich") and William J. Allen ("Allen") (collectively, "Plaintiffs"), individually and on behalf of all Class, respectfully submit this memorandum in support of their motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Parties' Stipulation and Agreement of Settlement dated July 7, 2023 (the "Stipulation")[1]; (ii) approval of the form and manner of giving notice to Class Members of the proposed Settlement; (iii) certification of the Class for settlement purposes; and (iv) the setting of a Settlement fairness hearing (the "Settlement Hearing") and deadlines for dissemination of Notice, for Class Member objections and exclusion, for the filing of Plaintiffs' motion for Final Approval of the Settlement, and for the filing of Plaintiffs' Counsel's application for an award of attorneys' fees, reimbursement of expenses, and compensatory awards to Plaintiffs.

## I.    PRELIMINARY STATEMENT

After litigating this Action for more than three years, Plaintiffs have negotiated a Settlement that provides a strong and immediate recovery to Class Members that is highly favorable in light of the risks of continued litigation. The proposed Settlement will resolve all claims against Defendants in exchange for a cash payment of $2,000,000 (the "Settlement Amount") for the benefit of the Class. Plaintiffs believe that the Settlement represents the majority of what could actually be collected on any award achieved at trial.

The Settlement was achieved only after defeating Defendants' motion to dismiss; drafting and filing a motion for class certification; engaging in significant discovery efforts; and engaging in multiple mediation sessions with two highly regarded mediators. Although the Action was not

---

[1] The "Parties" collectively refers to Plaintiffs, as defined above, together with Tufin Software Technologies, Ltd. ("Tufin") Reuven Kitov, Jack Wakileh, Reuven Harrison, Ohad Finkelstein, Edouard Cukierman, Yair Shamir, Ronni Zehavi, and Yuval Shachar (collectively, the "Individual Defendants" and, together with Tufin, "Defendants"). All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

resolved during the mediation sessions, negotiations subsequent to the last mediation session (and only weeks before depositions were to begin) resulted in the Settlement. The Settlement provides a substantial, immediate, and guaranteed recovery for Class Members. Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the Class Members' best interest. Moreover, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. Therefore, the Court should preliminarily approve the Settlement.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  Factual Background

Tufin is a self-described network-security policy-management company that offers products designed to protect against cybercrime—*i.e.*, crime involving unauthorized access to computer systems. ¶¶2, 41-42.[2] Tufin offers a suite of five interrelated software products called the "Tufin Orchestration Suite" (the "Suite"), which are designed to help companies protect against cybercrime. ¶¶39-43.

On March 6, 2019, Tufin filed its Registration Statement on Form F-1 and filed amendments on March 18, 2019 and April 1, 2019. ¶¶67, 69. The Registration Statement told investors that Tufin's "sales cycle usually lasts several months from proof of concept to purchase date, and is often longer for larger transactions." ¶74. According to Plaintiffs, these claims were misleading, and in reality, Tufin's sales cycle was typically a year and could take at least two years to close, with a six-month deal only achievable with luck. ¶55.

On April 11, 2019, Defendants filed a Prospectus on Form 424B4 that amended the

---

[2] Citations to "¶__" or "¶¶__" are references to the numbered paragraphs of the Second Amended Complaint (ECF 70).

Registration Statement and allowed the sale of securities to the public to proceed. ¶71. Tufin's

Offering began selling shares on April 11, 2019 at $14.00 per share, and ultimately sold 8,855,000

shares, receiving approximately $124 million in net proceeds from the IPO. In their initiating-

coverage reports, Tufin's analysts discussed representations related to the makeup and skill of the

Company's sales force and noted the short interval of the Suite's sales cycle. ¶72. On December

2, 2019, Tufin conducted a second public offering of 3,500,000 shares, later expanding to a total

of 4,620,000 shares, with a near-identical registration statement to the Tufin Registration

Statement that included the exact same language concerning Tufin's sales cycle.

On January 9, 2020, Tufin released preliminary unaudited revenue and non-GAAP

operating loss estimates for the fourth fiscal quarter of 2019, revealing total revenue in the range

of $29.5 million to $30.1 million, compared to its previous guidance of total revenue in the range

of $34.0 million to $38.0 million, and an anticipated non-GAAP operating loss in the range of $1.1

million to $2.6 million, compared to previous guidance of non-GAAP operating profit in the range

of $0.0 million to $3.0 million. ¶6. Tufin stated that it was unable "to close a number of

transactions, primarily in North America" as the primary reason for Tufin's revenue shortfall. ¶7.

It also acknowledged that the miss occurred because the deals were too complex and large, and it

lacked the scale required to manage a substantial volume of large complex deals. *Id*. On July 21,

2020, when this action commenced, Tufin's stock price closed for trading at a price of $10.50.

**B. Procedural History**

This action is currently pending before the Honorable Gregory H. Woods in the United

States District Court for the Southern District of New York (the "Court"), under the caption *In re

Tufin Software Technologies Ltd. Securities Litigation*, Case No. 1:20-cv-5646-GHW (the

"Action"). The initial complaint in this case was filed on July 21, 2020 against Tufin Software

3

Technologies Ltd. ("Tufin"), Reuven Kitov, Jack Wakileh, Reuven Harrison, Ohad Finkelstein, Edouard Cukierman, Yair Shamir, Ronni Zehavi, Yuval Shachar (together, the "Individual Defendants"), and other defendants (ECF 1). On August 10, 2020, a related action, *Michaelson v. Tufin Software Technologies Ltd. et al.*, Case No. 1:20-cv-06290-GHW, asserting violations of Sections 11 and 15 of the Securities Act was filed in this Court against Tufin and the Individual Defendants. On September 18, 2020, several competing motions seeking consolidation as well as appointment of lead plaintiff and lead counsel were filed. On October 19, 2020, the Court consolidated the *Ellison* Action and the *Michaelson* Action under the caption *In re Tufin Software Technologies Ltd. Securities Litigation*, Case No. 1:20-CV-05646 (S.D.N.Y.), and appointed Mark Henry as Lead Plaintiff and Levi & Korsinsky, LLP as Lead Counsel (ECF 44).

On February 4, 2021, Lead Plaintiff filed the Consolidated Complaint for the Violations of the Securities Act of 1933 (ECF 55) ("Amended Complaint"), naming as defendants Tufin and the Individual Defendants. On May 20, 2021, Defendants filed a motion to dismiss (ECF 61-63). Lead Plaintiff filed his opposition to the motion to dismiss on July 19, 2021 (ECF 64). And Defendants filed their reply on August 25, 2021 (ECF 68).

On February 25, 2022, the Court entered an order granting in-part and denying in-part the motion to dismiss (ECF 69). The Court permitted Lead Plaintiff the opportunity to replead his claims. *Id*. On March 31, 2022, Lead Plaintiff and Named Plaintiffs filed the operative Second Amended Consolidated Complaint for the Violations of the Securities Act of 1933 ("Second Amended Complaint") (ECF 70). The Second Amended Complaint was substantively identical to the Amended Complaint, except that it added as named plaintiffs Primozich and Allen.

On April 14, 2022, Defendants filed their Answer and Affirmative Defenses to the Second Amended Complaint (ECF 73). Shortly thereafter, the Parties commenced with written discovery.

4

On September 7, 2022, the Parties engaged in an ultimately unsuccessful mediation to try and resolve the litigation. Afterward, the Parties continued to engage in discovery.

On February 16, 2023, Plaintiffs filed their motion for class certification. ECF 92. On March 9, 2023, before Defendants' response to Plaintiffs' motion for class certification was due, the Parties informed the Court that they planned to engage in mediation once again, and requested the Court grant an extension of time to complete all fact discovery and briefing on Plaintiffs' motion for class certification, which the Court did. ECF 97-98. On March 29, 2023, Plaintiffs and Defendants participated in a full-day mediation before an experienced mediator, Jed Melnick. While a settlement was not finalized at that mediation, the Parties continued to hold multiple follow-up rounds of discussions and negotiations over the ensuing weeks. Ultimately, on April 11, 2023, the Parties reached an agreement to settle this Action for cash payments totaling $2,000,000, as documented in their agreement in a Settlement Term Sheet executed on May 1, 2023. The Parties informed the Court of the Settlement in a joint letter filed with the Court on April 17, 2023 and asked the Court that all deadlines be adjourned *sine die*. ECF 99.[3]

### C. The Settlement

The Parties have agreed to a settlement in principle exchanging a full release of all claims

---

[3] While the federal action was occurring, similar state court actions were filed in the Supreme Court of New York, New York County by Primozich, Allen, and other plaintiffs. On July 17, 2020, Primozich and Allen filed a motion to consolidate the state court actions and appoint Primozich and Allen as co-lead plaintiffs and their counsel, Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen Law"), as co-lead counsel. On August 5, 2021, against competing motions for consolidation, the Supreme Court of New York granted Primozich and Allen's motion. On December 8, 2021, at Defendants' request, the Supreme Court of New York stayed the consolidated state action until the resolution of the pending motion to dismiss in the federal action. On March 2, 2022, Primozich and Allen notified the Supreme Court of New York that the Court denied the motion to dismiss in the federal action and requested that the consolidated state action remain stayed. On April 7, 2022, Primozich and Allen filed a notice of voluntary discontinuance, dismissing the state court action and stating Primozich and Allen would be added as Named Plaintiffs in the federal action and their claims will proceed in this Court.

against all Defendants from all Settlement Class Members that do not exclude themselves in exchange for $2,000,000. Having litigated this Action since 2020, Plaintiffs and their Counsel were well-positioned to evaluate the Settlement, as well as the potential risks and benefits of continuing discovery, the briefing on Plaintiffs' motion for class certification, an anticipated motion for summary judgment, this case moving to trial, and the risks of sustaining over appeal and collecting a verdict even if they prevailed at trial. Based on this evaluation, Plaintiffs and their counsel agree that the Settlement represents a fair, adequate, and reasonable result for the Class.

While Plaintiffs believe that the merits of their case are strong, Defendants contend that they did not violate the U.S. securities laws, did not act with scienter, and did not cause damages to the Class. Although Plaintiffs believe their claims are well-supported and would ultimately prevail on summary judgment or at trial, they recognize the possibility that the Court may rule in favor of Defendants on summary judgment or the jury may not return a verdict in their favor, or may award damages less than the Settlement Amount. Additionally, a successful verdict at trial could be overturned on appeal, and there is a risk that the insurers would either deny coverage or that the eroding insurance policies would be insufficient to cover a verdict substantially larger than the Settlement Amount.

Plaintiffs have considered the additional costs and likelihood that trial and post-trial proceedings (including appeals and coverage litigation) would further erode insurance coverage and substantially delay any recovery. Given these significant risks, Plaintiffs and their counsel believe that the guaranteed, prompt recovery of the Settlement provides an excellent result and is in the best interest of the Class.

## III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The Second Circuit recognizes the "strong judicial policy in favor of settlements,

6

particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).  Courts should approve a class action settlement if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[4]

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *adhered to on reconsideration*, No. 01 CIV. 3020 (SAS), 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (internal quotation marks and citation omitted). "Preliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable … Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV. 2613 NRB, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) (internal quotation marks and citation omitted).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth

---

[4] Unless otherwise noted, all emphasis is added, and internal citations are omitted throughout.

below, this Settlement satisfies both prongs. It meets the criteria for final approval expressly

enumerated in Rule 23(e)(2), as well as those articulated in *Detroit v. Grinnell Corp.*, 495 F.2d

448 (2d Cir. 1974).

### A. The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and *Grinnell*

The Settlement is highly beneficial to the Class and satisfies the factors articulated in the

recent amendments to Rule 23(e)(2) and *Grinnell*. Under the recent amendments to Rule 23(e)(2),

courts assessing approval are to consider whether:

> (A) The class representatives and class counsel have adequately represented the class;
> (B) The proposal was negotiated at arm's length;
> (C) The relief provided for the class is adequate, taking into account:
> > (i) The costs, risks, and delay of trial and appeal;
> > (ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) The terms of any proposed award of attorneys' fees, including timing of payment; and
> > (iv) Any agreement required to be identified under Rule 23(e)(3); and
> (D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "add to, rather than displace, the *Grinnell* factors." *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y.

2019). Courts in the Second Circuit have long considered the following factors, set forth in

*Grinnell*, to evaluate "whether a class action settlement is fair, reasonable, and adequate under

Rule 23":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *8-9 (S.D.N.Y. Oct. 16, 2019) (citing

*Grinnell*, 495 F.2d at 463). While the Second Circuit has not prescribed any set order of consideration, at least one district court has suggested that courts first "consider[] the Rule 23(e)(2) factors, and then consider[] additional Grinnell factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card*, 330 F.R.D. at 29. However, the court should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 n.24. Indeed, certain factors—such as the reaction of the class to the settlement—cannot be fully considered until the final approval stage. *Id.*

### 1. The Class Was Well-Represented by Plaintiffs and their Counsel

Plaintiffs and Plaintiffs' Counsel more than satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement. That requirement focuses mainly on the "alignment of interests between class members." *See Wal-Mart*, 396 F.3d at 106-07. Here, Plaintiffs' interests (and those of counsel) were fully aligned at all times with the interests of absent Class Members. All bring the exact same claims asserting the same legal theory over the same Class Period. And, because Plaintiffs and Plaintiffs' Counsel all "share the common goal of maximizing recovery, there is no conflict of interest[.]" *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Plaintiffs have vigorously litigated this case from the beginning. Plaintiffs have significantly contributed to the Action by overseeing the litigation. Each Plaintiff helped with the initial investigation of this Action, the drafting of the Amended Complaint and Second Amended Complaint, the drafting of the opposition to Defendants' motion to dismiss, the drafting of Plaintiffs' initial disclosures, the drafting of Plaintiffs' first set of discovery requests, the drafting of Plaintiffs' responses to Defendants' first set of discovery requests, the collection of documents in response to Defendants' first set of discovery requests, and the mediation statements and

9

subsequent negotiations that ultimately resulted in the Settlement.

Plaintiffs' Counsel substantially advanced this Action and benefitted the Class. At the pleadings stage, Plaintiffs' Counsel thoroughly investigated the legal and factual bases for claims against Defendants, including conducting a private investigation, drafted a viable Amended Complaint, and researched and successfully opposed Defendants' motion to dismiss. After the Court sustained part of the Amended Complaint, the Parties worked together to determine if an early resolution of this Action was possible. Accordingly, the Parties agreed to engage in early-stage mediation, retained a highly regarded mediator, and each drafted and submitted detailed mediation statements. Plaintiffs' Counsel then engaged in a full-day mediation before experienced mediator Michelle Yoshida on September 7, 2023. While these initial settlement efforts were unsuccessful, they helped lay the foundation for the later, successful negotiations in the next year.

Plaintiff's Counsel have advanced the Class's interests by thoroughly conducting discovery, including drafting and serving document requests, subpoenas, and interrogatories; obtaining and reviewing thousands of pages of documents from Defendants as well as additional productions by third-parties; and engaging in numerous meet-and-confers with Defendants' counsel to resolve discovery disputes. Plaintiffs' Counsel also advanced this litigation by filing a letter for a premotion conference and then a motion for class certification, which is still pending before the Court (ECF 90-96).

Simultaneously, Plaintiffs' Counsel vigorously pursued settlement discussions. After the Parties agreed to engage in a second round of mediation and agreed on a mediator, Plaintiffs' Counsel drafted a mediation statement, prepared for and attended a full-day mediation session, and participated in further negotiations in the following weeks. Thus, the Settlement is demonstrably the product of the assiduous work and vigorous advocacy of both Plaintiffs' Counsel and Plaintiffs

on behalf of Tufin shareholders. Accordingly, this factor weighs in favor of approval.

### 2. The Settlement Is the Result of Good Faith, Arm's Length Negotiations

A settlement that is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation" enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also* Fed. R. Civ. P. 23(e)(2)(B). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.). Additionally, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Here, the Settlement was the result of extensive arm's length negotiations before a highly regarded mediator.

### 3. The Settlement Is an Excellent Result for the Class

The Settlement provides an excellent result and immediate recovery for the Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

Here, the Settlement provides a cash payment of $2,000,000 for the benefit of the Class. This is an excellent result, especially given the significant risks of continued litigation and the low possibility that a substantially higher verdict, even if awarded at trial and sustained on appeal, could actually be collected. After consulting with an econometric expert, Plaintiffs and their

counsel believe that a successful verdict on all claims could result in aggregated damages to the Class in the amount of approximately $24 million. However, there is no assurance that Plaintiffs would even make it to trial, with several litigation hurdles still in the way, including Plaintiffs' pending motion for class certification and an anticipated summary judgment motion from Defendants. Plaintiffs' failure to obtain wholly successful rulings on both of those motions would limit actual damages that the Class could obtain. Trial could also limit actual damages. Even if Plaintiffs prevailed, a jury might not accept that the entirety of the decline in stock price on each disclosure date was caused by the alleged fraud.

Even without discounting the unique risks to collectability and loss causation, the Settlement in this Action is favorable compared to other securities fraud class actions with similar damages. Plaintiffs estimate that this recovery represents approximately 8.33% of the approximately $24 million that Plaintiffs, after consulting with their damages experts, believe is the best aggregate measure of damages had they prevailed at trial. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at \*5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 2007 WL 313474, at \*10 (S.D.N.Y. Feb. 1, 2007) (a recovery of 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

### a.  The costs, risks and delay of trial and appeal support approval

The recovery is a strong result for the Class when considered on its own, and highly favorable when weighed against the risks of continued litigation. Although Plaintiffs have successfully prosecuted this case through the motion to dismiss stage, there can be no assurance that they would prevail on their pending motion for class certification, at the summary judgment

stage, or at trial. Even though Plaintiffs believe that they would be successful at each of those stages, there can be no assurance that the Court or the jury would find that the proposed class should be certified, that Defendants made misrepresentations, acted with scienter, or that those misrepresentations were the cause of investor losses. *See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."). Moreover, prevailing at trial would not necessarily result in a larger recovery. The jury could award a smaller amount of damages, or the verdict could be appealed. *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs).

### b.  Other Rule 23(e)(2)(C) factors support approval

Rule 23(e)(2)(C) also states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, the Settlement calls for an experienced Settlement Administrator to process claims and distribute the Net Settlement Fund *pro-rata* to the Class Members according to the defined Plan of Allocation using procedures that are well-established and have proved effective in securities fraud litigation. Strategic Claims Services ("SCS"), the Settlement Administrator selected by Plaintiffs' Counsel after a competitive bidding process (subject to Court approval), will process claims under the guidance of Plaintiffs' Counsel, and provide the Class Members with

13

a reasonable opportunity to cure deficiencies in their claims. Thereafter, SCS will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Plaintiffs' Counsel will then move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[5]

Second, as disclosed in the Notice, Plaintiffs' Counsel, who have not been paid to date, will apply for a fee award not to exceed one-third of the Gross Settlement Fund. Such a fee would be reasonable for the work performed and the results obtained and consistent with awards in similar complex class action cases. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16–17 (E.D.N.Y. Jan. 21, 2022) (awarding attorneys' fees equal to one-third the settlement); *In re Sequans Commc'ns S.A. Sec. Litig.*, Case No. 17-cv-04665-FB-SJB, ECF 73 (S.D.N.Y. Sept. 28, 2020) (same); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (collecting cases) (same); *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *8-10 (E.D.N.Y. Apr. 11, 2014) (collecting cases) (same). Here, the fee request follows "years of litigation … This is not a class action that was settled early on, with only minimal or preliminary discovery. The case involved a substantial expenditure of time and effort by Lead Counsel. The case was complicated.  And the risks of continuing litigation were substantial." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (collecting cases) (awarding 33% of the settlement); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (same); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding 33.3% for the first $10 million of settlement); *Gay v. Tri-Wire Eng'g Solutions. Inc.*,

---

[5] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Gross Settlement Fund based on the number or value of the claims submitted.

14

2014 WL 28640, at *12 (E.D.N.Y. Jan. 2, 2014) (awarding 35.3% of the settlement); *Mohney v. Shelly's Prime Steak. Stone Crab & Oysters Bar*, 2009 WL 5851465, at *1, 5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of the settlement).[6]

Third, to protect the Settlement and the Class, the Parties have placed the terms under which Defendants may terminate the Settlement if a certain threshold of Class Members submit valid and timely requests for exclusion into a separate confidential agreement. Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g., Christine*, 2019 WL 5257534, at *15.

### 4. The Settlement Treats All Class Members Equitably

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro-rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### B. The Remaining *Grinnell* Factors Support Approval

The additional factors articulated in *Grinnell* include: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the

---

[6] *See also Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999); *Stefaniak v. HSBC Bank USA, N.A.*, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008); *Collins v. Olin Corp.*, 2010 WL 1677764, at *6–7 (D. Conn. Apr. 21, 2010); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998).

risks of litigation. Here, each supports approval.[7] However, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

First, the stage of the proceedings favors approval. This factor assesses "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012). Here, after three years of litigation, engaging in extensive fact discovery, successfully opposing Defendants' motion to dismiss, filing a motion for class certification, and engaging in two separate mediations, Plaintiffs and Plaintiffs' Counsel are ideally situated to evaluate the merits of the Settlement and appreciate the strengths and weaknesses they will continue to face. *Supra* at Section III(A)(1).

Second, the low probability that Plaintiffs could collect on a judgment substantially larger than the Settlement Amount "weighs heavily in favor of approving the settlement." *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014); *see also Massiah*, 2012 WL 5874655, at *5 ("risk of collection weighs in favor of final approval, because the settlement decreases the risk of collection"). Here, the substantial risks of further litigation would likely impede Plaintiffs from collecting a judgment in excess of the $2,000,000 Settlement.

Finally, the Settlement is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *Agent Orange*, 597 F. Supp. at 762. Here, the $2,000,000 recovery is reasonable even before considering potential impediments

---

[7] One remaining *Grinnell* factor, the reaction of the Class, cannot meaningfully be assessed until Notice is disseminated and will be addressed at a later stage.

to continued litigation of this Action and is an excellent recovery after considering such risks.

## IV.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation, which is detailed in the Notice to be provided to the Class Members, will govern how the Settlement proceeds will be distributed among Class Members who timely file a valid Proof of Claim. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine*, 2019 WL 5257534, at *15. The proposed Plan of Allocation was prepared by Plaintiffs' Counsel after consulting with experts, and rationally reflects the allegations and causes of action asserted in this case as well as the Court's rulings. It will result in a fair and equitable distribution of the proceeds among Class Members who submit valid claims and does not preference Plaintiffs. Each will receive no more, or less, than his or her *pro-rata* share of the Net Settlement Fund based on recognized losses assessed by the formula described in the Notice.

## V.    THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiffs' recovery. *In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). The notice must also "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Plaintiffs' proposed plan of notice satisfies these standards. As specified by Rule 23(c)(3)

and 15 U.S.C. §78u4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the certified Class and who is excluded; (3) the reasons for settling; (4) the amount of the Gross Settlement Fund; (5) the Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Plaintiffs' Counsel may seek; (8) the maximum amount that may be requested as a reimbursement award to Plaintiffs; and (9) the plan for allocating the Settlement proceeds to the Class. Ex. A-1. The Notice also describes the process for seeking exclusion from the Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.*

To provide notice of the Settlement, the proposed Preliminary Approval Order directs that within 16 calendar days after entry of the Preliminary Approval Order, the Settlement Administrator shall either: (a) email a link to the location of the electronic Long Notice and Proof of Claim to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses; or (b) if no electronic mail address can be obtained, cause the Postcard Notice to be mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel. Ex. A at ¶14. In addition, a Summary Notice will be published once on the *GlobeNewswire* and the *Investor's Business Daily* within 26 calendar days after the mailing of the Postcard Notice begins. Ex. A at ¶18. All key Settlement documents will also be posted on the website. Ex. A at ¶17. Accordingly, the proposed plan of notice meets all the requirements of due process, the PSLRA, and the Federal Rules of Civil Procedure.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Settlement Hearing is

scheduled. In order to allow sufficient time for the Notice to be disseminated to the potential Class Members, Plaintiffs respectfully request that the Court schedule the Settlement Hearing at the Court's convenience but for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for notice to Class Members by either: (a) emailing the Summary Notice to Class Members for whom the Claims Administrator is able to obtain email addresses; or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail, postage prepaid (Preliminary Approval Order ¶14) | 16 calendar days after entry of Preliminary Approval Order |
| Deadline for the publication of the Summary Notice once on the *GlobeNewswire* and the *Investor's Business Daily* (Preliminary Approval Order ¶18) | 26 calendar days after entry of Preliminary Approval Order |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application (Preliminary Approval Order ¶29) | 28 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶22) | 21 calendar days prior to Settlement Hearing |
| Postmark deadline for submitting a Proof of Claim (Preliminary Approval Order ¶20(a)) | 28 calendar days prior to Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application (Preliminary Approval Order, ¶30) | 7 days prior to the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶6) | To be determined by the Court, approximately 100-105 days after entry of the Preliminary Approval Order |

## VII.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In preliminarily approving the proposed Settlement, this Court must consider whether to conditionally certify the Settlement Class for settlement purposes. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632. The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process. 4 NEWBERG ON CLASS ACTIONS § 13:18 (5th ed. 2012). The Court need not conduct a rigorous analysis at this stage to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). In certifying the Settlement Class the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id*. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the class is so numerous that joinder of all members is impracticable, (2) "commonality" – there are questions of law or fact common to the class, (3) "typicality" – the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) "adequacy" – the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, certification of a class action for damages requires a showing, under Rule 23(b)(3), that questions of law or fact common to the members of the class predominate over individual issues of law or fact ("predominance") and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). Here, the Parties

20

have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation, ¶9. For settlement purposes, Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation, comprising: all persons or entities that purchased or otherwise acquired Tufin common stock pursuant and/or traceable to Tufin's Registration Statements issued in connection with Tufin's April 11, 2019 initial public offering ("IPO") and/or its December 2, 2019 secondary public offering ("SPO"). *Id.* at ¶1.36. Here, the proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. In the Second Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Pearlstein v. BlackBerry Ltd.*, No. 13 CV 7060, 2021 WL 253453, at *7 (S.D.N.Y. Jan. 26, 2021); *see also Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *8 (E.D.N.Y. Nov. 10, 2021). Here, between the initial and second public offering, a total of 13,475,000 shares were purchased by investors. ECF 92, at 7. Although Plaintiffs have not at this time ascertained the precise number of potential Class members, they believe that there are many thousands of geographically dispersed members of the proposed Class. Thus, while Plaintiffs "do[] not know the 'exact' number of class members, [they] estimates that there are 'thousands' of investors residing in geographically disparate areas that would be included in the class, thus rendering joinder impracticable." *Rodriguez*, 2021 WL 9032223, at *8. Consequently, numerosity is satisfied. *Id.*

21

### B.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In securities fraud cases, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, common issues include (i) whether Defendants violated the Securities Act; and (ii) whether Tufin's claims about the length of its sales cycle were materially false and misleading. The misstatements regarding the length of Tufin's sales cycle were made in the Registration Statement disseminated in the market to all purchasers of Tufin common stock. Therefore, the price of any Class member's shares that were purchased in, or are traceable to the offering, are presumed to have been inflated by the material misrepresentations and/or omissions in the Registration Statement. In comparable situations, courts have consistently found the commonality requirement to have been satisfied. *See, e.g.*, *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007), *order aff'd in part, vacated in part*, 574 F.3d 29 (2d Cir. 2009).

### C.    Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The Second Circuit has established a two-pronged test. First, there must be a showing that class counsel is qualified, experienced and able to conduct the litigation. Second, the named plaintiffs' interests must not be antagonistic to the interest of other members of the class." *Rodriguez*, 2021 WL 9032223, at *9. "This is satisfied, where, as here, the claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of the other class members, where the claims are based

22

on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *Gordon*, 2022 WL 4296092, at *7. Here, Plaintiffs' claims and the claims of other Class Members arise from the same course of conduct and are based on the same legal theory. Thus, typicality is satisfied.

## D.    Adequacy

Besides having achieved a highly favorable settlement, the standard criteria of adequacy is also satisfied here. "Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 574 F.3d 29, 35 (2d Cir. 2009). Plaintiffs satisfy both prongs. Plaintiffs' interests are the same as absent Class Members: to maximize recovery and to make sure that recovery is achieved as soon as possible. There are no antagonistic interests. Likewise, having retained a highly experienced securities litigation firm and regularly communicated with the attorneys of record, Plaintiffs put the Class in a strong position throughout this Action.

## E.    The Class Meets the Requirements of Rule 23(b)

Rule 23(b)(3) requires proof that common issues predominate, and that a class action is the superior method of adjudication. As the U.S. Supreme Court noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. "Moreover, common issues, such as liability, may be certified even where other issues, such as damages, do not lend themselves to classwide proof." *Rodriguez*, 2021 WL 9032223, at *11. Further, "the predominance inquiry will sometimes be easier to satisfy in the settlement context" because a settlement class inherently addresses some of the practical concerns motivating the predominance test, concerns that are primarily relevant when certifying a

23

litigation class. *In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 232 (2d Cir. 2012).

Here, "[r]esolution of [Plaintiffs'] allegations—including questions of liability, causation, and damages—are susceptible to generalized proof and, further, such generalized inquiries predominate over any issues specific to individual class members." *Gordon*, 2022 WL 4296092, at *8; *see also Micholle v. Ophthotech Corp.*, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022).

Superiority is likewise established. Courts consider four factors in assessing superiority: (1) the interests of members of the class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability or undesirability of concentrating claims in one forum; and (4) the difficulties likely to be encountered in the management of a class action. *Amchem*, 521 U.S. at 616. Here, each factor favors certification. Because many investors suffered losses too small to justify individual litigation, class adjudication is the only realistic basis for recourse. Moreover, because "[t]here are likely thousands of class members nationwide . . . consolidating their claims is in the interests of efficiency and judicial economy." *Gordon*, 2022 WL 4296092, at *9; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019). "Additionally, a class action is superior where, as here, the economic loss incurred by many class members is not of a magnitude that would make individual 'litigation economical.'" *Gordon*, 2022 WL 4296092, at *9. There are no other parallel actions, and it is desirable to concentrate claims to avoid unnecessary duplication and waste of resources. Finally, Plaintiffs foresee no difficulty in effecting settlement on a class basis, as is the typical course in securities fraud class actions.

## F.    Lead Counsel Satisfies Rule 23(g)

Rule 23(g) requires the appointment of a class counsel that can fairly and adequately represent the interests of the Class, and specifically instructs the Court to consider:

(i) The work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiffs' Counsel satisfies all of these considerations. Plaintiffs' Counsel spent significant effort investigating the potential claims in this action before and after being appointed Lead Counsel, which led to a viable Amended Complaint. *Supra* at Section III(A)(1). Plaintiffs' Counsel are also highly experienced in the area of securities litigation and securities fraud class actions on behalf of investors, as outlined in the firms' resumes. *See* ECF 93, Exh. 1-3. Moreover, Plaintiffs' Counsel have extensive knowledge of the applicable law governing this Action, as demonstrated both by their experience, *id*., and their performance in this Action, where Plaintiffs' Counsel opposed Defendants' motion to dismiss. *See* ECF 61-69. Finally, Plaintiffs' Counsel have expended significant resources in representing the Class, including but not limited to the resources necessary to successfully engage in mediation. *Supra* at Section III(A)(1). Thus, Plaintiffs' Counsel's extensive efforts and in-depth knowledge of the law governing this Action weigh strongly in favor of appointment under Rule 23(g).

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed Settlement, (2) approve the Plan of Allocation, (3) approve the proposed form and manner of notice, (4) certify the proposed Class for purposes of the Settlement; and (5) schedule a Settlement Hearing.

//

//

25

DATED: July 12, 2023

**LEVI & KORSINSKY, LLP**


/s/ Adam M. Apton
Nicholas I. Porritt
Adam M. Apton
55 Broadway, 4th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171

*Counsel for Lead Plaintiff Mark Henry and Lead Counsel for the Class*

**POMERANTZ LLP**
Patrick V. Dahlstrom
Christopher P.T. Tourek (*pro hac vice* application forthcoming)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
　　　ctourek@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Brent LaPointe
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
　　　lrosen@rosenlegal.com
　　　blapointe@rosenlegal.com

*Counsel for Named Plaintiffs Matt Primozich and William J. Allen*