# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TUFIN SOFTWARE TECHNOLOGIES LTD. SECURITIES LITIGATION | Master File No. 1:20-cv-5646-GHW |
| | Hon. Gregory H. Woods |

**DECLARATION OF PAUL MULHOLLAND REGARDING THE CALCULATION OF ESTIMATED DAMAGES AND THE PLAN OF ALLOCATION**

I, Paul Mulholland, declare and state as follows:

## I.    Introduction

1.    I have personal knowledge of the facts set forth herein and, if called on to testify, I could and would do so to the best of my ability.

2.    I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action litigation support firm. I have over thirty (30) years of experience specializing in litigation support services focusing on damage analyses, plans of allocation and administrative services in securities class action matters. I have testified as an expert witness in securities and other class action matters. Attached as Exhibit A is my curriculum vitae.

3.    Since 1992, I have provided litigation support services in all aspects of securities litigation (class action) matters. I have prepared hundreds of damage analyses and plans of allocation.

4.    I was retained by Class Counsel to explain how damages were calculated under Section 11 of the Securities Exchange Act of 1934 and U.S. Securities & Exchange Commission ("Section 11 Damages") and how the proposed plan of allocation (the "POA" or "Plan") was designed to follow Section 11 Damages to allocate the settlement proceeds among Settlement Class Members who submit valid Proof of Claim Forms that are approved for payment by the Court ("Authorized Claimants").

5.    After the Parties reached the proposed Settlement, I then was asked by Class Counsel to review the preliminary damage report for Section 11 Aggregate Damages prepared by Stanford Consulting Group, Inc. (the "Section 11 Damage Report") in this matter and prepare the proposed POA and the calculation of Recognized Loss consistent with the methodology in the Section 11 Damage Report. In Section II, below, I explain the methodology used to calculate Section 11 Damages; the accuracy of the inputs used in the Section 11 Damage Report; and the formulas in the Section 11 Damage Report is accurate and can be relied upon to assist in preparing the POA. In Section III, I describe the calculation of Recognized Loss using the same inputs and formulas in the Section 11 Damages Report

to develop the proposed Plan and explain how a Claimant's recovery will be calculated on a *pro rata* basis.

## II.    METHOD USED FOR CALCULATING ESTIMATED SECTION 11 DAMAGES

6.    Based on my experience calculating Section 11 Damages in securities class actions, it is my understanding that, for losses to be compensable damages under the federal securities laws, the Registration Statements were negligently prepared and contained false statements of material fact or omitted to state other facts necessary to make the statements made not false or misleading. The alleged false or misleading statements in the Initial Public Offering ("IPO") Registration Statement in this matter are fully described in paragraphs 74 to 81 of the Second Amended Consolidated Complaint dated March 31, 2022 filed in this matter.   I also assume there were false and misleading statements in the Second Public Offering ("SPO") Registration Statement.

7.    The measurement of damages under §§11 and 15 of the Securities Act of 1933 for the IPO and the SPO **"shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought[1]"** Based on my review of the Section 11 Damage Report, the key inputs are:  IPO offering price of $14 per share: SPO offering price of $17 per share; and number of shares of Tufin common stock offered and purchased or otherwise acquired pursuant and/or traceable to Tufin's Registration Statements issued in connection with Tufin's April 11, 2019 IPO (8,855,000 shares) and/or its December 5, 2019 SPO (4,620,000 shares).   These inputs are accurate and will be used and relied upon in preparing the proposed POA.  In addition, the formulas used in the Section 11 Damage Report is consistent with the measurement of damages under §§11 and 15 of the Securities Act of 1933 and can be relied upon to assist in preparing the proposed POA.   In addition,

---

[1] Source is measurement of damages under §§11 and 15 of the Securities Act of 1933.

Class Counsel has estimated the value at date of suit is $10.50 per share so that the maximum recovery per share is $3.50 for the Eligible IPO Shares and $6.50 for Eligible SPO Shares.

## III.    CALCULATION OF RECOGNIZED LOSS UNDER THE PROPSOED PLAN

8.    The calculation of Recognized Loss follows the definition of the measurement of damages under §§11 and 15 of the Securities Act of 1933.

9.    Given the inputs described in paragraph seven, I now describe how these inputs are used to calculate Recognized Loss Amounts under the Plan.  First, only shares purchased or otherwise acquired pursuant and/or traceable to Tufin's Registration Statements for the IPO ("Eligible IPO Shares") and SPO ("Eligible SPO Shares") are eligible. Each claimant's transactions for IPO and SPO Eligible Shares and sales through July 21, 2020[2] are matched under the first-in-first-out (FIFO") share-matching methodology.   Under the FIFO method, a sale is matched to the oldest (first-in) purchase occurring prior to the sale, with the matching occurring in the chronological order of the sales.

10.    Eligible IPO Shares represents common shares purchased during the 180-day period after the IPO covering the period April 11, 2019 to October 7, 2019, inclusive[3].   Under Rule 144 of the Securities Act of 1933 and pursuant to page 127 of the IPO Registration Statement, restricted shares are typically eligible for sale in the public market 180 days after the IPO[4]. Based on this, I assume shares purchased 180 days after the IPO (October 7, 2019) are no longer traceable to the IPO Registration Statement and, therefore, are not Eligible IPO Shares.

11.    Eligible SPO Shares represents common shares purchased on or shortly after December 5, 2019 at or about the SPO price of $17.00 per share.  I assume shares purchased after the SPO offering at a price different than the SPO price per share were commingled with other non-SPO shares and were no longer traceable to the SPO Registration Statement and, therefore, are not Eligible SPO Shares.

---

[2] Class Counsel has determined trading activity after July 21, 2020 is no longer relevant in determining and Recognized Losses under the proposed POA.

[3] After the IPO Offering, 73.6% of ordinary share were restricted and 26.4% were unrestricted.  Source: page 332 of the IPO Registration Statement.

[4] Restricted shares will be eligible for sale into the public market, under the provisions of Rule 144 of the Securities Act commencing after the expiration of the restrictions under the 180-day lock-up agreements and subject to volume restrictions under Rule 144 of the Securities Act. Source is page 127 of the IPO Registration Statement.

4

12.     Consistent with measurement of damages under §§11 and 15 of the Securities Act of 1933, Eligible IPO Shares purchased between April 11, 2019 and October 7, 2019, inclusive, Recognized Loss shall be calculated as follows:

A.  For shares sold between April 11, 2019 and July 21, 2020[5], inclusive, the Recognized Loss shall be the lesser of:

    i.     The purchase price per share (not to exceed the $14.00 per share IPO price) less the sale price per share; or

    ii.    $3.50 per share[6].

B.  For shares held as of the close of trading on July 21, 2020, the Recognized Loss shall be the purchase price per share (not to exceed the $14.00 per share IPO price) less $10.50 per share[7].

13.     July 21, 2020 is the cut-off date for providing sales transactions for IPO and SPO Eligible Shares. Class Counsel has determined sales of Eligible IPO and SPO Shares after July 21, 2020 have little or no impact in calculating Recognized Losses under the proposed POA.

14.     Consistent with measurement of damages under §§11 and 15 of the Securities Act of 1933, Eligible SPO Shares purchased pursuant or traceable to the SPO on December 5, 2019, Recognized Loss shall be calculated as follows:

A.  For shares sold between December 5, 2019 and July 21, 2020, inclusive, the Recognized Loss shall be the lesser of:

    i.     $17.00 per share SPO price less the sale price per share; or

    ii.    $6.50 per share[8].

B.  For shares held as of the close of trading on July 21, 2020, the Recognized Loss shall be $6.50 per share.

**A.  Examples of the Calculation of Recognized Loss under the Proposed POA**

15.     In this Section of my Declaration, I provide examples of these calculations of Recognized Loss under the Proposed Plan.

---

[5] The filing date of the initial suit as provided by Class Counsel.

[6] $3.50 per share is the difference between the $14.00 per share IPO price and the $10.50 per share representing the estimated value of Tufin common stock at the date of the suit.

[7] This is the estimated value of Tufin common stock at date of suit.

[8] $6.50 per share is the difference between the $17.00 per share SPO price and the $10.50 per share, the estimated value of Tufin's common stock at the date of suit.

16.    Eligible IPO Shares Purchased above the IPO Price and Sold Prior to July 21, 2020 above the IPO price per share.    There would be no Recognized Loss since the purchase price under the proposed Plan is "capped" at the $14 IPO price and the selling price was greater than $14 per share. For example, a claimant purchased Eligible IPO Shares on April 24, 2019 at closing price of $24.27 per share and sold those shares on June 11, 2019 at a closing price of $22.70 per share.  The formula to compute Recognized Loss per share is $14 per share minus $22.70 per share resulting in a negative $8.70 per share or no Recognized Loss.

17.    Eligible IPO Shares Purchased above the IPO Price and Sold Prior to July 21, 2020 below the IPO price per share.    There would be a Recognized Loss since shares were sold below the $14 IPO price. For example, a claimant purchased Eligible IPO Shares on the same day on April 24, 2019 at a closing price of $24.27 per share and sold those shares on February 25, 2020 at a closing price of $13.10 per share.  The formula to compute Recognized Loss per share is $14 per share minus $13.10 per share or a Recognized Loss of $.90 per share.

18.    Eligible IPO Shares Purchased and Held as of July 21, 2020. There would be a Recognized Loss of $3.50 per share since all Eligible IPO Shares were purchased at or above the IPO price of $14 per share[9] and the estimated value at time of suit was $10.50 per share.

19.    Eligible SPO Shares Purchased and Sold Prior to July 21, 2020 above the SPO price per share.  There would be no Recognized Loss since and the selling price is above $17 per share SPO price. For example, a claimant purchased Eligible SPO Shares on December 5, 2019 at $17 per share and sold those shares on January 7, 2020 at a closing price of $17.45 per share.  The formula to compute Recognized Loss per share is $17 per share minus $17.45 per share or a negative $.45 per share or no Recognized Loss.

20.    Eligible SPO Shares Purchased and Sold Prior to July 21, 2020 below the SPO price per share.    There would be a Recognized Loss since the selling price was below $17 per share.  For example, a claimant purchased Eligible SPO Shares on December 5, 2019 at $17 per share and sold those shares on June 8, 2020 at a closing price of $10.80 per share.  The formula to compute Recognized Loss per share is $17 per share minus $10.80 per share or a Recognized Loss of $6.20 per share.

---

[9] All Eligible IPO Shares are assigned a purchase price value of $14 per share since shares always traded above the IPO price of $14 per during the relevant period from April 11, 2019 through and including October 7, 2019.

21.    <u>Eligible SPO Shares Purchased and Held as of July 21, 2020.</u>    There would be a Recognized Loss of $6.50 per share since all Eligible SPO Shares were purchased at $17 per share and the estimated value at time of suit was $10.50 per share.

Given a Claimant's Recognized Loss, the Claimant will receive a distribution amount from the Net Settlement Fund based on the Claimant's *pro rata* share of the total Recognized Losses of all Authorized Claimants.  For example, assume the Net Settlement Fund is $1,000 and there are four claimants, A, B, C, and D whose Recognized Claims are $500, $1,000, $1,500, and $2,000, respectively. Thus, the total Recognized Losses are $5,000 and the *pro rata* shares of Claimants A, B, C, and D are, respectively, 10% ($500/$5,000), 20% ($1,000/$5,000), 30% ($1,500/$5.000), and 40% ($2,000/$5,000). Claimant A would receive a distribution amount of $100 (10% x $1,000), Claimant B would receive a distribution amount of $200 (20% x $1,000), Claimant C would receive a distribution amount of $300 (30% x $1,000), and Claimant D would receive a distribution amount of $40 (40% x $1,000).  The table below summarizes this example.

| Claimant | Recognized Loss | *Pro Rata* Allocation | Distribution Amount |
|---|---|---|---|
| A | $500 | 10% | $100 |
| B | $1000 | 20% | $200 |
| C | $1500 | 30% | $300 |
| D | $2000 | 40% | $400 |
| Total | $5000 | 100% | $1000 |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 31st, 2023.

Paul Mulholland

**EXHIBIT A**

## <u>PAUL MULHOLLAND</u>
<u>(CURRICULUM VITAE)</u>

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999.  SCS is a litigation support firm specializing in damage analyses, loss calculations, plans of allocation and administration of security class action matters. Attached as Exhibit I is a summary of expert testimonies and depositions. In addition, I have prepared hundreds of damage analyses, loss calculations and plans of allocation over the past thirty-one years.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Philadelphia Investment Banking Company.  Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters.   He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio.  He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand.  He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling University and is a Certified Public Accountant (inactive). He was an adjunct professor of accounting and finance at Neumann University and currently serves on its business advisory board.

EXHIBIT I
PAUL MULHOLLAND
EXPERT TESTIMONIES AND DEPOSITIONS

**Expert Testimony:**

Celia L. Hale., et al., v. Wal-Mart Stores, Inc
Jackson County, Missouri
Case No. 01-CV-218710 (Division 1)                              June 2008

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                       June 2004

Barter v. Southmoore Golf Associates                   March 21, 2000 and
(Common Pleas of Northhampton County (No. 199-C-1815)   March 22, 2000

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   March 1995

**Depositions:**

Fosamax Products
Liability Litigation No. 1:06-MD-1789 (JFK)
(MDL No. 1789)
USDC for the Southern District of New York                     June 14, 2007

Aredia and Zometa Products
Liability Litigation No. 3:06-MD-1760
(MDL No. 1760)
USDC for the Middle District of Tennessee
at Nashville                                                   May 31, 2007

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                       June 2004

In Re: Curative Health Services, Inc. Securities Litigation
(Master File No. CV99-2074) United States District Court
Eastern District of New York                                   February 2002

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   January 1995

**Mediation Presentation:**

Alibaba Group Holding Limited Securities Litigation
Civil Action 1:15-md-02361 (CN)
USDC Southern District of New York
Mediation Presentation to Honorable Layne R Phillips          March 2019

9